(720 P.2d 1132)

No. 58,191

WESTERN KANSAS EXPRESS, INC., and JAYHAWK TRUCK LINE, INC., *Appellant,* v. DUGAN TRUCK LINE, INC., *Appellee.*

Opinion filed June 26, 1986.

*W. Robert Alderson, Jr.,* and *John E. Jandera,* of Topeka, for the appellants.

*Edgar Wm. Dwire,* of Malone, Dwire and Jones, of Wichita, for the appellee.

Before PARKS, P.J., RICHARD A. MEDLEY, District Judge, assigned, and ROBERT L. BISHOP, District Judge, assigned.

*Per Curiam:* This action was filed by plaintiffs, Western Kansas Express, Inc., and Jayhawk Truck Line, Inc., against Dugan

Truck Lines, Inc., for damages allegedly arising out of the violation of regulations administered by the Kansas Corporation Commission (KCC). The district court granted defendant's motion to dismiss and plaintiffs appeal.

Plaintiffs and defendant are corporate entities and public motor carriers regulated by the KCC pursuant to K.S.A. 66-1,108 *et seq.* (unless noted otherwise, all statutory references in this opinion are to the 1980 Ensley edition). In proceedings before the commission, it was determined that defendant had transported goods for hire between points and places in Kansas without authority and through territory lawfully served by plaintiffs under their certificates of convenience and necessity. A cease and desist order was issued by the commission June 8, 1983. On July 18, defendant requested a hearing. On November 1, the commission ordered that the cease and desist order should remain effective. On November 21, plaintiffs filed a motion to intervene in the proceedings before the commission, alleging that defendant was diverting traffic from plaintiffs and that their ability to serve the public as they were required to do by law was impeded. Plaintiffs were permitted to appear as intervenors at a hearing before the commission on December 12, but they sought no damages and requested no additional investigation.

On January 23, 1984, the KCC issued its findings that between the approximate date of the cease and desist order and the approximate date it was ordered that the cease and desist order remain effective (July 19, 1983 to November 7, 1983), defendant violated its authority 38 times. A fine of $100 for each of 21 violations was imposed, the other violations being found insufficiently serious to warrant a penalty.

On July 9, 1984, plaintiffs filed this suit in district court seeking damages arising out of defendant's unauthorized transportion of goods. Plaintiffs requested three times their actual damages, the costs of the suit, and a reasonable attorney fee pursuant to K.S.A. 66-176. Defendant moved to dismiss contending that the court lacked jurisdiction to consider plaintiffs' claim and that the petition failed to state a claim for which relief may be granted.

The district court ordered dismissal of this case concluding that the KCC "has primary jurisdiction to hear alleged violations of [defendant's] certificate of convenience and necessity." The

court based this conclusion on the broad powers given the KCC to regulate public motor carriers and the provisions of K.S.A. 66-176 which the court concluded "authorizes the SCC [State Corporation Commission] to award money damages to an aggrieved party, under the facts of this case." For this reason, the court also concluded that plaintiffs had an appropriate administrative remedy "for an impartial resolution of the facts underlying their complaints against [defendant]," and that the district court action was barred by plaintiffs' failure to exhaust the available administrative remedies.

The action filed by plaintiffs against defendant was for private damages arising out of defendant's allegedly unlawful conduct. This is essentially a common-law action for negligence per se, which would ordinarily fall squarely within the jurisdiction of our district courts. *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, Syl. ¶ 2, 483 P.2d 1029 (1971). Therefore, the dispositive issue in this case is whether the district court correctly held that plaintiffs had an administrative remedy for their claim for money damages which substitutes or supplements the common-law right. If such a remedy exists, it must ordinarily be exhausted before a litigant may resort to the courts. *Pecenka v. Alquest*, 232 Kan. 97, 99-100, 652 P.2d 679 (1982). On the other hand, if no administrative remedy is available or if it is inadequate to address the problem in issue, exhaustion is not required. *Hamilton v. United Telephone Co. of Kansas*, 6 Kan. App. 2d 885, 887, 636 P.2d 202 (1981), *rev. denied* 230 Kan. 817 (1982); *Beaver v. Chaffee*, 2 Kan. App. 2d 364, 369, 579 P.2d 1217 (1978). In addition, mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an administrative remedy unless the statute or regulation under which that power is exercised established clearly defined machinery for submission, evaluation, and resolution of complaints by aggrieved parties. *Beaver*, 2 Kan. App. 2d at 369.

Initially, it must be concluded that none of the administrative provisions regulating common carriers are intended to substitute or eliminate private remedies provided at common law. K.S.A. 66-156, which gives the KCC general supervision over common carriers and the authority to inquire into any neglect of duty or violations of law, states that "[n]othing in this section shall be construed as relieving any public utility or common carrier from

its responsibility or liability for damage to person or property." In addition, K.S.A. 66-178 provides as follows:

"No statute providing for the regulation of public utilities or common carriers shall be construed to estop or hinder any person or corporation from bringing suit against any such public utility or common carrier for any violation of the laws of this state for the government of public utilities and common carriers."

The district court held that a party pursuing actual damages resulting from a violation of authority granted by the KCC has a remedy before the commission pursuant to K.S.A. 66-176. This statute provides as follows:

"Any public utility or common carrier which shall violate any of the provisions of law for the regulation of such public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, three times the actual damages sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney fee, to be fixed by the court; and if an appeal be taken from the judgment or any part thereof, it shall be the duty of the appellate court to include in the judgment an additional reasonable attorney's fee for services in the appellate courts."

Although this statute has been in effect since 1883, there are only two Kansas cases which have considered its significance. In *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 505-06, 665 P.2d 757 (1983), the court held that the provision for treble damages did not apply to a damage action against a one-city gas public utility which is exempt from most state regulation. There was no contention raised or considered in *Kearney* that K.S.A. 66-176 described an administrative remedy rather than one which must be imposed by a court. Indeed, it was assumed in that case that the statute provided a penalty which is intended to be invoked against regulated utilities by a court finding the utility in violation of its regulations. The court simply concluded that the defendant in *Kearney* did not fall within the class of regulated utilities embraced by the treble damage penalty.

In the ancient case of *Beadle v. K.C. Ft. S. & M. Rld. Co.*, 51 Kan. 248, 32 Pac. 910 (1893), the court discussed the 1883 version of the statute, which contained essentially the same language, but applied only to railroads. The *Beadle* court stated:

"The purpose of the statute is not merely to punish an offense against the public justice of the state, but to afford a private remedy to the person injured by the wrongful act. [Citation omitted.] The party aggrieved may recover a greater amount under the statute than at the common law." 51 Kan. at 252.

The *Beadle* court also noted that "[t]he overcharges, however,

may all be recovered under the statute, as at common law, with additional damages or penalty. No regulation or order of the board [of railroad commissioners] is necessary for the recovery of such overcharges." 51 Kan. at 253. Thus, the court appears to have considered the statute as expanding the remedy available to a party bringing a lawsuit for damages resulting from the breach of a regulation. *Beadle* did not indicate that it was the administrative body which was to assess this additional remedy.

The district court's conclusion that K.S.A. 66-176 describes an administrative remedy which must be exhausted before resort to the damage action brought by plaintiffs is also belied by the ordinary meaning of the statute. The fundamental rule of statutory construction to which all others are subordinate is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *In re Tax Protests of Midland Industries, Inc.*, 237 Kan. 867, 703 P.2d 840 (1985). Courts are required to consider and construe all parts of an act *in pari materia* to ascertain legislative intent. To be *in pari materia*, statutes need not have been enacted at the same time; statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together. *Claflin v. Walsh*, 212 Kan. 1, 8, 509 P.2d 1130 (1973).

K.S.A. 66-176 uses language which specifically contemplates its application to a judicial, not an administrative, proceeding. The statute refers to "costs of suit" rather than those of the administrative proceeding. The provision also refers to "a reasonable attorney fee, to be fixed by the court." Defendant contends that damages are to be assessed by the KCC and that only attorney fees are to be fixed by the court. However, this would require a plaintiff to split his cause of action and prove it before both the KCC and the court. Finally, the statute also refers to an appeal taken from the judgment and states that "it shall be the duty of the appellate court to include in the judgment an additional reasonable attorney's fee for services in the appellate court or courts." If the statute contemplated a damage award at the agency level, it would refer to the costs of appeal being incurred in the district court where the appeal of an administrative order would first lie. K.S.A. 66-118a. In short, there is no language in the statute which vests the power to award damages with the KCC.

We conclude that K.S.A. 66-176 is intended to grant the court in which a damage action has been filed against a public utility or common carrier the power to award treble damages, costs, and attorney fees as a penalty when it finds the defendant violated the provisions of the law regulating the utility or common carrier. The statute does not invest the KCC with the power to award damages to a party aggrieved by a violation of the law regulating common carriers.

We note briefly that none of the provisions defining the broad regulatory powers of the KCC and relied on by the district court persuade us away from this conclusion. In addition to the general authority to regulate public utilities and common carriers given the KCC under K.S.A. 66-111 and 66-129, statutory provisions regulating public motor carriers are found at K.S.A. 66-1,108 *et seq.*, in some 38 separate provisions. These statutes include two penalty provisions—K.S.A. 66-1,126, providing that operating as a carrier without a certificate or license or in violation of the terms thereof is a misdemeanor, and K.S.A. 66-1,130, providing that a violation of the act is a misdemeanor to be punished by a fine not exceeding $500.00. In addition, fines may be imposed for violations of the regulatory laws. K.S.A. 66-138 and 66-177. However, all of these penalties are paid to the state treasurer and enforced by the attorney general. None of the provisions cited by defendant or relied on by the district court provide for a damage remedy to a third party which is to be assessed by the KCC.

Finally, we need to briefly attempt to clear up some confusion regarding the doctrine of primary jurisdiction. This doctrine of administrative law has been defined as the determination of whether a court or an administrative agency has the authority to make an initial rather than a final decision. *Hamilton*, 6 Kan. App. 2d 885. Primary jurisdiction does not allocate power between courts and agencies to make final determinations but guides the court in deciding whether the court should refrain from exercising its initial jurisdiction until after an administrative agency has employed its expertise to resolve some question best decided for reasons of uniformity or technical expertise by the agency. Davis, Administrative Law Text § 19.01, p. 373 (3rd ed. 1972). The doctrine of primary jurisdiction is different from the exhaustion of remedies requirement in that the exhaustion doctrine requires that judicial action on the claim be withheld

when the law provides that such a claim may first be treated by the proper administrative agency. On the other hand, primary jurisdiction is invoked in situations in which the courts have jurisdiction over the claim from the outset but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of the administrative body. *Sunflower Elec. Coop. v. Kansas Power & Light Co.*, 603 F.2d 791, 796 (10th Cir. 1979).

In this case, the issues which might profit from the expertise of the regulatory agency have already been addressed by the KCC. Since there was no remedy available to plaintiffs in that forum for the damages they may have sustained, there is no bar erected by the exhaustion doctrine or policy created by "primary jurisdiction" to prevent the district court's resolution of this case.

The order of dismissal is reversed and the case remanded for trial.