(823 P.2d 810)
No. 66,179

ELDA I. DIETZ, *et al., Appellants,* v. THE ATCHISON, TOPEKA
AND SANTA FE RAILWAY COMPANY, *et al., Appellees.*

Opinion filed December 27, 1991.

*James C. Morrow* and *Timothy W. Monsees*, of Law Offices of Gordon N. Myerson, P.C., of Kansas City, Missouri, for appellants.

*Paul R. Hoferer* and *Nola Wright Viola*, of Topeka, for appellee The Atchison, Topeka and Santa Fe Railway Company.

*Theresa A. Pasek*, staff attorney, for appellee Kansas Department of Transportation.

Before BRISCOE, C.J., ELLIOTT and GERNON, JJ.

BRISCOE, C.J.: In a wrongful death action, plaintiffs Elda Dietz, Randy Dietz, Gary Dietz, and Verla McGinnes appeal from the district court's order granting summary judgment in favor of defendants The Atchison, Topeka & Santa Fe Railway Co., the State of Kansas, the Kansas Department of Transportation, and Horace Edwards, Secretary of Transportation.

Vernon Dietz drove a tractor trailer truck into the side of a slow-moving freight train and was killed instantly. At the time of the accident, Dietz was operating his truck pursuant to authority granted by the Kansas Corporation Commission to Vernon Dietz, d/b/a Dietz Motor Lines. The truck was hauling a nearly empty anhydrous ammonia tanker. Kansas motor carrier safety regulations require drivers hauling hazardous materials to stop their trucks at railroad crossings and to look and listen in each direction before crossing the tracks (K.A.R. 82-4-3[a][3]). Dietz's truck left more than 300 feet of skid marks before the crossing, indicating he had attempted to stop. An accident reconstruction expert testified the evidence indicated that Dietz realized a train was at the crossing when he was about 500 feet from the track. The crossing was marked with an advance warning sign and an advance pavement sign 872 feet before the railroad crossing, an advance pavement sign 272 feet before the crossing, and a cross buck sign 12 feet before the crossing. The warning signs meet the mandatory minimum requirements listed in the Manual on Uniform Traffic Control Devices (1988).

Plaintiffs brought this wrongful death action, alleging defendants were negligent in failing to place active warning devices such as flashing lights or electronic signals at the crossing that would warn motorists of the presence of a train. In granting defendants' motion for summary judgment, the district court found that Dietz, a driver of a tanker containing hazardous materials, was negligent per se in failing "to comply with his legally imposed duty to stop, look and listen before proceeding across the crossing" and that the direct and proximate cause of the accident was his failure to stop at the crossing. The court further found that, even if defendants were negligent in some way, as a matter of law, Dietz was 50 percent or more negligent; thus,

any recovery was barred under the Kansas comparative fault statute.

## Scope of Review

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citations omitted.]" *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

To recover for negligence, plaintiffs must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991).

## Negligence Per Se

Plaintiffs argue the regulation requiring drivers of hazardous materials to stop, look, and listen before proceeding at railroad crossings is clearly designed to protect the public at large from the dangers of hazardous material accidents and, therefore, violation of the regulation provides neither a private right of action for defendants nor a defense for defendants in an action brought by a driver.

"[V]iolation of a statute alone does not establish negligence per se. The [party alleging negligence per se] must also establish that an individual right of action for injury arising out of the violation was intended by the legislature. Statutes enacted to protect the public, therefore, do not create a duty to individuals injured as a result of a statutory violation. [Citation omitted.]

"Generally, the test of whether an individual right of action exists for violation of a statute is whether the legislature intended to give such a right. In the absence of express provisions, the legislative intent to grant or withhold such a right is determined primarily from the language of the statute. The nature of the evil sought to be remedied and the purpose the statute was intended to accomplish may also be taken into consideration. [Citation omitted.]" *Kansas State Bank & Trust Co. v. Specialized Transp. Serv., Inc., et al.*, 249 Kan. 348, 370, 819 P.2d 587 (1991).

"[A] statute which does not purport to establish civil liability but merely makes provision to secure the safety and welfare of the public does not establish civil liability." *Schlobohm v. United Parcel Service, Inc.*, 248 Kan. 122, 125, 804 P.2d 978 (1991).

Interpretation of a statute is a question of law (*NCAA v. Kansas Dept. of Revenue*, 245 Kan. 553, 557, 781 P.2d 726 [1989]), and this court's review of conclusions of law is unlimited (*Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 [1988]).

K.S.A. 66-1,112(b) and K.S.A. 1990 Supp. 66-1,129 authorize the Kansas Corporation Commission to adopt regulations governing all motor carriers of property or of passengers. Regulations adopted pursuant to these statutes and at issue in this case include K.A.R. 82-4-2 and 82-4-3(a)(3), which require drivers of tankers containing hazardous materials to comply with 49 C.F.R. § 392.10(a) (1990), which states in relevant part:

"Except as provided in paragraph (b) of this section, the driver of a motor vehicle specified in paragraphs (a)(1) through (6) of this section shall not cross a railroad track or tracks at grade unless he first: Stops the vehicle within 50 feet of, and not closer than 15 feet to, the tracks; thereafter listens and looks in each direction along the tracks for an approaching train; and ascertains that no train is approaching."

49 C.F.R. § 392.10(a)(4) applies to: "Every cargo tank motor vehicle, whether loaded or empty, used for the transportation of any hazardous material as defined in the Hazardous Materials Regulations of the Department of Transportation." 49 C.F.R. § 172.101 (1990) lists anhydrous ammonia as a hazardous material.

Under the facts of this case, would defendants have an individual right of action against Dietz for violation of the regulation which requires drivers of tankers containing hazardous materials to stop, look, and listen before proceeding across a railroad crossing? In considering this question, we first note the trial court's conclusion that Dietz was operating as a common carrier is not challenged by plaintiffs on appeal. Further, as regards the existence of an individual right of action against common carriers, K.S.A. 66-176 states:

"Any public utility or common carrier which shall violate any of the provisions of law for the regulation of such public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, three times the actual damages sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney fee, to be fixed by the court; and if an appeal be taken from the judgment or any part thereof, it shall be the duty of the appellate court to include in the

judgment an additional reasonable attorney's fee for services in the appellate court or courts."

In *Beadle v. K.C. Ft. S. & M. Rld. Co.*, 51 Kan. 248, 32 Pac. 910 (1893), the Supreme Court discussed the 1883 version of 66-176, which contained essentially the same language, but applied only to railroads. The *Beadle* court stated:

"The purpose of the statute is not merely to punish an offense against the public justice of the state, but to afford a private remedy to the person injured by the wrongful act. [Citation omitted.] The party aggrieved may recover a greater amount under the statute than at the common law." 51 Kan. at 252.

More recently, in *Western Kansas Express, Inc. v. Dugan Truck Lines, Inc.*, 11 Kan. App. 2d 336, 339-40, 720 P.2d 1132 (1986), this court noted the *Beadle* decision favorably and held there was no reason for those seeking private remedy to proceed administratively when seeking damages under the statute. In that case, this court did not specifically address the question of whether 66-176 creates an individual right of action. A plain reading of 66-176, however, indicates the legislature clearly intended to create, on behalf of "any person or corporation" injured as a direct result of a common carrier's violation of provisions of law regulating common carriers, an individual right of action against the common carrier. This right is in addition to the potential imposition of other penalties. 11 Kan. App. 2d at 341.

If defendants could file an action against Dietz for damages, they could use Dietz's negligence as a defense in this action. Dietz's violation of the regulation was negligence per se and the district court did not err in its ruling on this issue.

## Proximate Cause

The next question is whether Dietz's negligence per se was the proximate cause of his damages. Plaintiffs argue defendants were negligent in failing to provide adequate warnings at the crossing and, therefore, a jury question was created as to the proximate cause of the accident.

"The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. [Citation omitted.]

"Whether conduct in a given case is the cause in fact or proximate cause of plaintiff's injuries is normally a question of fact for the jury. [Citation omitted.] However, where the facts are such that they are susceptible to only one inference, the question is one of law and may be disposed of summarily by the court when the plaintiff has failed to establish the necessary burden of proof. [Citation omitted.]" *Baker v. City of Garden City,* 240 Kan. 554, 557, 731 P.2d 278 (1987).

In its pretrial order, the district court outlined plaintiffs' claims:

"Plaintiffs specifically claim that on July 20, 1988, at approximately 10:30 p.m., plaintiff's decedent, Vernon Dietz, was operating a tractor trailer truck, generally east bound on U.S. 36 just outside of Courtland, Kansas. There, he encountered a railroad grade crossing jointly maintained and controlled by defendants. Although equipped with passive warning signs (cross buck signs and advance warning signs), no active warning signals (flashing lights, flashing lights with gates) were present. As such, approaching motorists were not advised of the physical presence of a train occupying the crossing. Factors and criteria known to defendants (or which could have been known upon reasonable investigation and inquiry) dictated the need for active signals at the crossing. Among those factors were the following:

"a. Prior history of night time vehicular/train collisions similar to the one which resulted in the death of Mr. Dietz.

"b. High vehicular traffic count (985 vehicles per day).

"c. High percentage of heavy commercial vehicles making up the total traffic count.

"d. Frequent use of the crossing by vehicles transporting hazardous materials.

"e. The average incidence of train usage, particularly slow moving trains.

"f. The angled approach of the crossing in relation to the roadway which made the approach of trains more difficult to detect.

"g. The absence of illumination at the crossing.

"h. The human factors of motor vehicle operators encountering the crossing."

As a general rule a pretrial order controls the subsequent course of action unless such order is modified at trial to prevent manifest injustice. *Sieben v. Sieben,* 231 Kan. 372, 376-77, 646 P.2d 1036 (1982).

Here, there was no objection to the pretrial order and it was not modified. Thus, the essence of plaintiffs' complaint is that defendants were negligent because there was no active warning that a train was on the track when Dietz drove into the crossing. They are not arguing Dietz did not have adequate warning that the crossing existed. This distinction is critical.

In 1939, our Supreme Court noted: "It is the general rule that when a train is rightfully on a crossing and a motor vehicle is driven into it, with resulting damages, the sole cause of such damages is the fact that the driver of the motor vehicle drove it into the train." *Bledsoe v. M.-K.-T. Rld. Co.*, 149 Kan. 741, 749, 90 P.2d 9 (1939). The railroad has a right to make a reasonable use of a crossing and, ordinarily, the presence of a train on a railroad crossing is of itself an adequate warning to the driver of a vehicle on a highway, and special safeguards need not be employed in the absence of unusual surroundings, conditions, and circumstances. *Waits v. St. Louis-San Francisco Rly. Co.*, 216 Kan. 160, 168, 531 P.2d 22 (1975). This rule has been modified and Kansas now recognizes that "unusually dangerous conditions" can exist where "mere presence of the train on the crossing may not adequately warn users of the highway of the danger in time to avoid a collision." *Waits*, 216 Kan. at 170. The critical factor, however, is whether "the motorists' perceptibility of the train occupying the crossing is substantially impaired through no fault of their own." *Waits*, 216 Kan. at 170.

Plaintiffs argue the crossing was unusually dangerous because defendants were negligent in failing to install active warnings to alert motorists a train was on the tracks. This position might be valid for that class of motorists who have no statutory duty to stop at every crossing. Dietz, as a driver of an anhydrous ammonia tanker, had a statutory duty to stop, look, and listen before proceeding across the crossing. For the class of drivers who must stop, look, and listen at railroad crossings before proceeding, the presence of a moving train on the tracks blocking the crossing is adequate warning of its presence. As a matter of law, there is no need for any additional warning unless some condition at the crossing would make it impossible for a stopped driver to observe the train blocking the roadway. See *Williams v. Union Pacific Railroad Co.*, 204 Kan. 772, 777, 465 P.2d 975 (1970). While plaintiffs argue the crossing was unusually dangerous because it lacked active warnings and lights, they do not allege there was anything that would prevent a driver stopped at the crossing from perceiving a moving train blocking the road. Active warnings at the crossing to alert Dietz that a train was in fact on the track would have served no additional purpose.

Since the facts in this case "are susceptible to only one inference," the question of proximate cause was one of law and was properly resolved by the district court. *Baker*, 240 Kan. at 557. Dietz's negligence per se was the proximate cause of his accident, and plaintiffs' arguments to the contrary are rejected.

## Comparative Negligence

Plaintiffs argue a jury should have apportioned fault and the district court erred in holding: "Even if there were negligence on the part of one or both of the defendants, as a matter of law the decedent was fifty percent (50%) or more negligent thus barring recovery under the comparative fault statute. (K.S.A. 60-258a.)"

Our comparative negligence statute "requires a weighing of the causal negligence, if any, of all parties whose conduct brought about the harm, and the consequent imposition of individual liability for damages based upon the proportionate fault of each party to the occurrence." *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 844-45, 610 P.2d 1107 (1980). In order for plaintiffs to prevail on this issue, they must have proved defendants were negligent and bore some responsibility for causing the accident by failing to more effectively warn there was a train on the tracks. As plaintiffs have failed to prove defendants had any additional duty to warn beyond the warning presented by the presence of the train on the track, defendants were not negligent and the rules of comparative negligence do not apply.

Plaintiffs rely on *Williams*, 204 Kan. 772, to support their contention that defendants were negligent and to urge that the trial court erred in granting summary judgment to defendants in this case. *Williams* was a negligence action filed by a truck driver whose gasoline tanker was struck by a switch engine on a city street during early morning hours. The driver failed to stop, as he was required to do, before crossing the tracks. He did slow his truck to 10 miles per hour before crossing but did not see the train. View of the crossing was obstructed and there were no warning signs posted. The engineer testified he rang the bell and gave the usual crossing warnings as he approached. A jury found for the truck driver and the railroad appealed, arguing the driver was negligent per se because he failed to stop at the

crossing as required by law. The Supreme Court found the crossing was unusually dangerous and that the railroad needed to provide additional warnings to motorists.

The present case is distinguishable from *Williams*. The following are facts which are present in this case, but were not present in *Williams*: (1) The train was already blocking the intersection. Dietz ran into the train; the train did not hit Dietz. (2) The road approaching the crossing was straight and level and there are no obstructions blocking the view of the crossing. (3) There were advance warning signs that meet the mandatory minimum standards of the Manual on Uniform Traffic Control Devices. (4) Dietz saw the train 500 feet before he reached the crossing and left more than 300 feet of skid marks before the crossing. (5) The complaint here is that the railroad failed to adequately warn Dietz there was a train on the track. In short, the driver in *Williams* was unable to perceive the train's presence through no fault of his own, while in this case Dietz perceived the train and collided with it because he failed to stop at the crossing.

Finally, plaintiffs argue defendants could have foreseen *"or might reasonably have . . . foreseen"* that Dietz would drive through the crossing without stopping; thus, defendants were negligent in failing to give special warnings when a train was on the track. Nevertheless, "[a] railroad company need not anticipate that a motorist will be negligent." *Grisamore, Administratrix v. Atchison, T.&S.F. Rly. Co.*, 195 Kan. 16, 19, 403 P.2d 93 (1965).

Since plaintiffs have failed to prove defendants were negligent, comparative negligence of defendants is not an issue. While the district court erred in implying the railroad and the State might be negligent to some extent, the court's ruling on summary judgment was correct. "The reasons given by the district court for its decision are immaterial so long as its ruling was correct for any reason." *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 245, 777 P.2d 811 (1989).

As we have determined the district court did not err in granting defendants' motion for summary judgment, the remaining issues need not be addressed.

Affirmed.