(901 P.2d 20)

No. 72,456

GRINDSTED PRODUCTS, INC., *Appellant*, v. KANSAS CITY POWER & LIGHT CO., *Defendant/Appellee*, and THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Intervenor/Appellee*.

Opinion filed August 4, 1995.

*C. Edward Peterson* and *Jeremiah D. Finnegan*, of Finnegan, Conrad & Peterson, of Kansas City, Missouri, for appellant.

*William G. Riggins* and *Derek E. Wood*, of Kansas City, Missouri, for defendant/appellee.

*Dan Riley, Brian J. Moline*, and *Susan B. Cunningham*, of Topeka, for intervenor/appellee.

Before BRAZIL, C.J., LEWIS, J., and JACK L. BURR, District Judge assigned.

BRAZIL, C.J.: Grindsted Products, Inc., (Grindsted) appeals the district court's dismissal of its claim for lack of subject matter jurisdiction. Grindsted argues that a claim for damages under K.S.A. 66-176 need not be first determined by the Kansas Corporation Commission (KCC). We affirm the district court's order dismissing Grindsted's action.

The facts are largely undisputed on appeal. Grindsted manufactures bulk food products. Kansas City Power & Light Company (KCP&L) provides electricity to Grindsted's manufacturing plant in Johnson County, Kansas. KCP&L charges Grindsted for service

pursuant to the general service-large (GL) tariff. The GL tariff has been approved by the KCC and is on file with the commission.

Effective July 1988, KCP&L created an Economic Development Rider (EDR) to provide incentive rates for eligible customers. The KCC approved the EDR. The stated purpose of the EDR was to encourage "industrial and commercial business development in Kansas. These activities will attract capital expenditures to the State, diversify the Company's customer base, create jobs and serve to improve the utilization efficiency of existing [KCP&L] facilities."

The EDR's discounted rates are only available in conjunction with government economic development programs where incentives have been offered to locate or expand facilities in the KCP&L service area. The EDR rates apply only to new customers or to existing customers who install separately metered facilities. The rates apply only to those facilities not selling or providing goods and/or services to the general public.

Grindsted began planning an expansion of its existing manufacturing site. Grindsted, through its agents, spoke with KCP&L about the electric service and rates to be charged at the expansion facility. Grindsted completed the separately metered expansion facility in May 1990. Electrical service to the expansion facility was billed at the GL rate with no EDR discount.

Grindsted became aware of the EDR discount in 1993. Grindsted asked KCP&L to bill the facility at the discounted rate because it was eligible under the terms of the EDR. KCP&L stated that the incentives were designed to encourage businesses to build or expand in the KCP&L service area "where the customer decision to build, relocate or expand has not been made." KCP&L noted that Grindsted had decided to expand its facility prior to learning about the EDR incentives; thus, the provisions of the EDR did not apply.

Grindsted filed suit in district court, alleging that KCP&L misconstrued the language of the EDR to Grindsted's detriment. Grindsted alleged that the EDR applied to it and KCP&L currently charged rates for service in excess of those authorized by law. Grindsted sought refund of the excess charges. Further, Grindsted

sought treble damages, attorney fees, and costs pursuant to K.S.A. 66-176.

Grindsted simultaneously filed a complaint with the KCC alleging that KCP&L had discriminated against it in failing to inform Grindsted of the provisions of the EDR, KCP&L had incorrectly interpreted the EDR, and KCP&L had as a result overcharged Grindsted for service. Grindsted asked the KCC to enter an order determining that KCP&L improperly failed to apply the EDR tariff and requiring KCP&L to serve Grindsted under the EDR tariff.

KCP&L filed a motion to dismiss for lack of subject matter jurisdiction in the district court. The district court granted KCC's motion to intervene for the limited purpose of addressing the jurisdiction issue. The KCC also filed a motion to dismiss for lack of subject matter jurisdiction. The district court granted the motions after oral argument.

In its brief, the KCC states that the commission reviewed the issues and claims set forth by Grindsted and dismissed the claim on its merits. Grindsted filed a petition for reconsideration, which was denied. Following oral argument, KCP&L provided this court with a certified copy of a petition for judicial review and a copy of the KCC's order.

Grindsted argues that the district court erred in dismissing its claim for lack of jurisdiction. Whether the district court has jurisdiction is a question of law over which this court has unlimited review. *Zion Lutheran Church v. Kansas Comm'n on Civil Rights*, 16 Kan. App. 2d 237, 239, 821 P.2d 334 (1991), *affirmed* 251 Kan. 206, 830 P.2d 536 (1992).

The district court set out its decision as follows:

"1. Plaintiff's Petition requests the Court to construe Defendant's EDR tariff and determine that Plaintiff has been charged excessive rates for electric service by Defendant;

"2. The controlling cases are *Southwestern Bell Telephone Co v. Kansas Corporation Commission*, 233 Kan. 375 (1983), which recognizes the jurisdiction of the Kansas Corporation Commission (KCC) to interpret and construe rate tariffs; and *Denison Mutual Telephone v. Kendall*, 195 Kan. 227 (1965), which holds that parties who complain that a public utility has charged excessive rates should first invoke the relief provided by the Public Utilities Act before resorting to the courts;

"3. In addition, the factors set forth in *Hamilton v. United Telephone Co. of Kansas,* 6 Kan. App. 2d 885 (1981) underscore the need for the KCC's expertise in determining the issues raised by Plaintiff in the first instance, and;

"4. Plaintiff's claim, as stated in its Petition, is premature, and Plaintiff's Petition has not stated a cause of action, and therefore the Motions to Dismiss for Lack of Subject Matter Jurisdiction should be granted and this case dismissed."

Grindsted first argues that its claim for damages based on excessive charges may be brought directly to the district court without KCC review. Grindsted cites K.S.A. 66-176, which states:

"Any public utility or common carrier which shall violate any of the provisions of law for the regulation of such public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, three times the actual damages sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney fee, to be fixed by the court; and if an appeal be taken from the judgment or any part thereof, it shall be the duty of the appellate court to include in the judgment an additional reasonable attorney's fee for services in the appellate court or courts."

Grindsted argues that the statute establishes a cause of action for damages separate from administrative relief through the KCC. K.S.A. 66-176 was enacted in 1883 and, prior to 1995, had not been amended since 1923. *Kearney v. Kansas Public Service Co.,* 233 Kan. 492, 505, 665 P.2d 757 (1983). The Kansas Supreme Court has stated that "K.S.A. 66-176 is penal in nature and is to be strictly construed and should not be expanded by implication." 233 Kan. at 506.

Grindsted points to several cases which it contends support the theory that K.S.A. 66-176 creates a separate cause of action to be taken directly to the district court. The first is *Beadle v. K. C. Ft. S. & M. Rld. Co.,* 51 Kan. 248, 32 Pac. 910 (1893). Beadle had filed an action for damages incurred when the railroad overcharged him for shipment of coal. *Beadle v. K. C. Ft. S. & M. Rld. Co.,* 48 Kan. 379, 380, 29 Pac. 696 (1892). Beadle's original petition sought treble damages under the predecessor to K.S.A. 66-176. The trial court dismissed the petition because it was filed outside the one-year statute of limitations. Beadle amended the petition to seek only actual damages under the common law in an attempt to avoid the statutory bar. The Kansas Supreme Court affirmed the trial court's dismissal of the amended petition. 48 Kan. at 380-82.

Upon rehearing, the court considered the issue of whether the somewhat newly enacted predecessor to K.S.A. 66-176 and accompanying statutes abrogated the shipper's common-law remedy. The statutes in question applied only to railroads and other common carriers. 51 Kan. at 249.

The Kansas Supreme Court concluded that the statutes, when read together, created a "full and complete remedy to the shipper who has been overcharged." 51 Kan. at 251. The court noted that the statutory remedy, which provided for treble damages, was better than that afforded by the common law, which only provided for actual damages. Beadle was thus confined to statutory relief because it abrogated the common-law remedy. 51 Kan. at 251.

Grindsted states that "[t]he question was raised in *Beadle* whether the plaintiff was entitled to pursue an action under the statute or whether resort to the Railroad Commission was required in the first instance." No such question was raised in *Beadle.* In the last full paragraph of its decision, the court noted the argument that the language of another portion of the railroad statute continued the common law in force in addition to the statutory remedies. 51 Kan. at 253. In what was essentially dictum, the court stated:

"The statute referred to does not change or limit the common-law liability of a railroad company as a common carrier, but enlarges that liability. The action for the recovery of overcharges, under the statute, must be brought under subdivision 4 of § 18 of the code, within one year; not three years. The overcharges, however, may all be recovered under the statute, as at common law, with additional damages or penalty. *No regulation or order of the board is necessary for the recovery of such overcharges,* and no order or regulation of the board can prevent the operation of § 19, chapter 124, Laws of 1883, (Gen. Stat. of 1889, ¶ 1342,) concerning the recovery of such overcharges." (Emphasis added.) 51 Kan. at 253.

Grindsted points to the emphasized language as support for its theory that it may pursue damages under K.S.A. 66-176 in the district court without KCC review of the underlying issues. KCP&L argues that *Beadle* has no precedential value because it was decided before the creation of a state agency to regulate utilities and before the advent of rate tariff filing and approval procedures. Further, the version of the statute quoted in *Beadle* applied only to railroad companies. Grindsted counters that *Beadle*

has been cited with approval in recent cases and applies to the case at hand.

Grindsted cites *Western Kansas Express, Inc. v. Dugan Truck Lines, Inc.*, 11 Kan. App. 2d 336, 720 P.2d 1132 (1986). In *Western Kansas Express,* the KCC determined that defendant had transported goods to certain locations in Kansas without authority and through territory served by plaintiffs pursuant to certificates of convenience and necessity. The KCC issued a cease and desist order. Plaintiffs intervened in the proceedings before the commission, arguing that defendants were defying the order and harming the plaintiffs. Plaintiffs sought no damages. The KCC fined defendants. 11 Kan. App. 2d at 337.

Plaintiffs then filed suit in district court seeking damages arising out of the unauthorized transportation of goods. Plaintiffs sought treble damages and attorney-fees pursuant to K.S.A. 66-176. Defendant filed a motion to dismiss for lack of jurisdiction. The court dismissed the action, concluding that the KCC had primary jurisdiction to hear the complaint. 11 Kan. App. 2d at 337. The court held that the statute authorized the KCC to award treble damages and attorney fees. The court further stated that plaintiffs had an administrative remedy which they did not exhaust prior to filing the action in district court. 11 Kan. App. 2d at 338.

This court noted on appeal that the action was one for damages arising out of defendant's illegal conduct and was "essentially a common-law-action for negligence per se, which would ordinarily fall squarely within the jurisdiction of our district courts." 11 Kan. App. 2d at 338. This court focused on whether an administrative remedy existed and whether the plaintiffs failed to exhaust that remedy. 11 Kan. App. 2d at 338. It cited language from *Beadle* which indicated that the statute was not merely punitive but afforded a private remedy. The court also cited *Beadle's* statement that " '[n]o regulation or order of the board [of railroad commissioners] is necessary for the recovery of such overcharges.' " 11 Kan. App. 2d at 340. This court concluded:

"Thus, the court appears to have considered the statute as expanding the remedy available to a party bringing a lawsuit for damages resulting from the breach of a

regulation. *Beadle* did not indicate that it was the administrative body which was to assess this additional remedy." 11 Kan. App. 2d at 340.

This court analyzed the language of K.S.A. 66-176 and concluded that "there is no language in the statute which vests the power to award damages with the KCC." 11 Kan. App. 2d at 340. It further stated:

"We conclude that K.S.A. 66-176 is intended to grant the court in which a damage action has been filed against a public utility or common carrier the power to award treble damages, costs, and attorney fees as a penalty *when it finds the defendant violated the provisions of the law regulating the utility or common carrier.* The statute does not invest the KCC with the power to award damages to a party aggrieved by a violation of the law regulating common carriers." (Emphasis added.) 11 Kan. App. 2d at 341.

Grindsted reads the language in *Western Kansas Express* to mean that the district court, not the KCC, must determine whether the utility violated the law regulating it. Grindsted argues that the issue in *Western Kansas Express* was "whether the KCC had authority to consider and award a complete remedy under K.S.A. 66-176." KCP&L points out that by the time the action in *Western Kansas Express* was commenced in district court, it was undisputed that defendant had violated the law. The KCC had determined 38 violations had occurred and fined defendant for 21 of them. The only remaining issue was whether plaintiffs were entitled to treble damages and attorney fees under the statute.

Grindsted next cites *Dietz v. Atchison, Topeka & Santa Fe Rwy. Co.*, 16 Kan. App. 2d 342, 823 P.2d 810 (1991), *rev. denied* 250 Kan. 804 (1992). *Dietz* was a wrongful death action brought by the survivors of a truck driver who drove his truck into the side of a moving train and was killed. The parties did not dispute on appeal that the deceased had violated a KCC regulation requiring drivers hauling hazardous materials to stop, look, and listen at railroad crossings. The district court concluded that the deceased was negligent per se and granted summary judgment for defendants.

Plaintiffs argued on appeal that the regulation was designed to protect the public at large and did not create a private right of action or a defense for defendants. This court noted K.S.A. 66-176 and the language of *Beadle* which indicated that the statute af-

forded a private remedy. It also found that *Western Kansas Express* failed to determine whether K.S.A. 66-176 created an individual right of action and concluded:

"A plain reading of 66-176, however, indicates the legislature clearly intended to create, on behalf of 'any person or corporation' injured as a direct result of a common carrier's violation of provisions of law regulating common carriers, an individual right of action against the common carrier. This right is *in addition* to the potential imposition of *other penalties*." (Emphasis added.) 16 Kan. App. 2d at 347.

We conclude that while *Western Kansas Express* and *Dietz* cite to the language in *Beadle*, they do not go so far as to say that the trial court may independently determine whether a public utility has violated the laws regulating it. At best, *Western Kansas Express* and *Dietz* allow a plaintiff to bring an action for treble damages under K.S.A. 66-176 after it has been determined that the utility violated the law.

The United States District Court for the District of Kansas recently considered *Beadle, Western Kansas Express,* and *Dietz* and came to a similar conclusion. In *Rothwell v. Werner Enterprises, Inc.,* 859 F. Supp. 470 (D. Kan. 1994), Rothwell was injured on the job when a truck hit the elevated bucket in which he was working. Rothwell brought a suit in tort against the truck driver's employer in district court and requested treble damages under K.S.A. 66-176. The federal court considered the statute of limitations for treble damages claims under the statute and stated:

"K.S.A. 66-176 does not provide an action upon a liability created by a statute 'other than a penalty or forfeiture' because it does not attempt to create new causes of action, but rather provides for cumulative relief. [Citations omitted.] The purpose of the provision is to grant courts the power, when a plaintiff is *otherwise entitled to relief,* to tack on additional liability, namely treble damages and liability for costs and attorney fees." (Emphasis added.) 859 F. Supp. at 479.

The court concluded that an action for treble damages under the statute must be filed within one year. 859 F. Supp. at 479.

KCP&L and the KCC do not dispute the assertion that the KCC does not have jurisdiction to award treble damages under K.S.A. 66-176. They instead argue that Grindsted should not be able to escape the jurisdiction of the KCC by invoking the statute. KCP&L

and the KCC argue that only the KCC has jurisdiction to consider the underlying question of whether KCP&L incorrectly interpreted their tariff and overcharged Grindsted.

K.S.A. 66-101 states that "[t]he commission is given full power, authority and jurisdiction to supervise and control the electric public utilities . . . and is empowered to do all things necessary and convenient for the exercise of such power, authority and jurisdiction." The commission has the power to establish and maintain just and reasonable rates. K.S.A. 66-101b. The commission has the duty to investigate all rates, tolls, schedules, classifications, rules, and regulations of the utility to ensure that they are reasonable and nondiscriminatory. K.S.A. 66-101d. The commission has general supervision of all other aspects of public utilities in the state. K.S.A. 66-101h. Further, "all grants of power, authority and jurisdiction herein made to the commission, shall be liberally construed, and all incidental powers necessary to carry into effect the provisions of this act are expressly granted to and conferred upon the commission." K.S.A. 66-101g.

The Kansas Supreme Court relied on K.S.A. 66-101 in *Pelican Transfer & Storage v. Kansas Corporation Commission*, 195 Kan. 76, 402 P.2d 762 (1965). Pelican sought a declaratory judgment in district court interpreting its certificate of convenience and necessity issued by the KCC. The KCC filed a motion to dismiss for lack of jurisdiction. The district court denied the motion and issued an injunction preventing the highway patrol from interfering with Pelican's operations.

The issues on appeal were whether interpretation of the certificate was an administrative matter to be determined by the KCC prior to judicial review and whether Pelican could maintain an independent action for declaratory judgment and injunctive relief. The Kansas Supreme Court cited K.S.A. 66-101, which at the time applied to common carriers as well as public utilities. The court stated that the statute gave the commission full power and authority to regulate common carriers and allowed the commission to do all things necessary and convenient in the exercise of its power. 195 Kan. at 79. The court concluded that "[i]t is abundantly clear that the legislature has vested original, exclusive, primary jurisdic-

tion in the commission to hear and determine all questions with respect to the supervision and regulation of motor carriers operating in this state." 195 Kan. at 80.

The Kansas Supreme Court, relying on the exhaustion of remedies doctrine, held that the KCC must first pass on questions of interpretation of certificates before review of the issues by the district court. The court stated that in this way, "[a]ll of the facts and contentions of the affected and interested parties could then be considered by the commission, and on an appeal to the district court, the court would have before it the full benefit of the complete record on which the action of the commission was based." 195 Kan. at 81.

The same reasoning is easily applied to the interpretation of tariffs. KCP&L points to *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 233 Kan. 375, 664 P.2d 798 (1983). Southwestern Bell appealed the trial court's decision to affirm a KCC determination that a Southwestern Bell customer had been improperly charged under the language of a Southwestern Bell tariff. The court held that interpretation of a tariff was a question of law. The court applied the rules of statutory construction to the tariff and reversed. 233 Kan. at 382.

Grindsted argues that since interpretation of a tariff is a question of law over which the courts are the final arbiter, the filing of its action in district court "appropriately eliminates the needless step of asking the administrative body to render what in effect would be a non-binding legal decision." This argument is without merit.

KCP&L counters that the *Southwestern Bell* court stated that "in regard to questions of law *addressed initially by an administrative agency* the court is the final authority." (Emphasis added.) 233 Kan. at 382; see also *In re Application of Southwestern Bell Tel. Co.*, 9 Kan. App. 2d 525, 531, 685 P.2d 304, *rev. denied* 236 Kan. 875 (1984) ("[Q]uestions of tariff interpretation should be *appealed* to the district court." [Emphasis added.]).

KCP&L places great emphasis on the statement of the *Southwestern Bell* court that "[t]here is no contention in this case that the KCC order suffered any procedural infirmity or was beyond

the authority of that agency to address." 233 Kan. at 376. KCP&L argues that had the KCC not had jurisdiction to consider the interpretation of a tariff, the court would have voided the KCC's decision on appeal.

KCP&L's argument that the KCC has jurisdiction over tariff interpretation is persuasive. KCP&L also points out that the KCC has jurisdiction over excessive charge claims against public utilities. See *Denison Mutual Telephone Co. v. Kendall*, 195 Kan. 227, 403 P.2d 1011 (1965); *Sunflower Pipeline Co. v. Kansas Corporation Commission*, 3 Kan. App. 2d 683, 600 P.2d 794 (1979).

In *Denison*, plaintiff sought rescission of contracts for the sale of a telephone company based on misrepresentations made by Kendall. Denison argued on appeal that the trial court erred in failing to consider its related claim that Kendall did not comply with orders and schedules of the KCC. Denison argued that Kendall imposed excessive rates for service. The Kansas Supreme Court stated that these complaints must be first addressed by the commission:

"In adopting the public utilities act, K.S.A., chapter 66, the state reserved the right to regulate the public utility business. The state corporation commission is given full power, authority and jurisdiction to regulate service, prescribe rates and order a continuance of service at such prescribed rates. [Citations omitted.] Thus, parties who complain that a public utility has failed to furnish adequate service or has charged excessive rates should invoke the relief provided by the public utilities act before resorting to the courts." 195 Kan. at 231.

In *Sunflower Pipeline Co. v. Kansas Corporation Commission*, 5 Kan. App. 2d 715, 624 P.2d 466, *rev. denied* 229 Kan. 671 (1981), Sunflower had charged customers more than the rate approved by the KCC for irrigation gas. The KCC ordered refunds to all customers who were charged more than the lawful rate. Sunflower appealed. This court held that the KCC has the power to order refunds for charges in excess of published rates. 5 Kan. App. 2d at 720. The KCC may also order interest on the refunds where the overcharges were incurred as a result of imprudent or unreasonable actions. *Kansas Gas & Electric Co. v. Kansas Corp. Comm'n*, 14 Kan. App. 2d 527, 540, 794 P.2d 1165, *rev. denied* 247 Kan. 704 (1990).

Grindsted attempts to argue that this is not an excessive rate case. This is a curious argument in light of Grindsted's petition in district court, which states under the heading "Excessive Charges" that "Grindsted has been charged rates in excess of the lawful tariff rates." Grindsted frames the first issue in its brief as follows: "A claim under K.S.A. 66-176 for damages sustained in the form of excessive charges may be brought in District Court without a prior determination by the Kansas Corporation Commission." Grindsted also states in its brief that it "contends that it has been required to pay amounts over and above amounts it would have paid under the EDR."

Grindsted then argues that *Denison* and *Sunflower* are cases where a utility has charged customers rates higher than those approved by the KCC, but here the utility has charged a lawful rate which does not apply to Grindsted. Grindsted acknowledges that the facts of *Southwestern Bell* present a similar situation to the case at hand but argues that the action in that case was filed with the KCC at the plaintiff's election, and such filing was not required.

These arguments are without merit. Grindsted is seeking a refund of overcharges resulting from KCP&L's interpretation of a tariff, which is clearly within the KCC's power to grant.

Grindsted argues that the primary jurisdiction doctrine demands that the district court consider the issue of tariff interpretation without the benefit of a KCC determination. KCP&L and the KCC argue that the KCC has exclusive jurisdiction over issues of tariff interpretation and excessive charges. They argue that the doctrine of primary jurisdiction does not apply, and they implicate the doctrine of exhaustion of remedies.

"Both the exhaustion doctrine and the primary jurisdiction doctrine determine when judicial review may take place. Under the exhaustion doctrine, a party must first exhaust the administrative remedies that could grant relief before resorting to the courts . . . . The primary jurisdiction doctrine simply defines situations in which the court should refer the matter to an agency for an initial determination of some fact or issue." Leben, *Survey of Kansas Law: Administrative Law,* 37 Kan. L. Rev. 679, 708-09 (1989).

The doctrine of primary jurisdiction applies only when an agency and a court have concurrent jurisdiction over an action and is usu-

ally applied to isolated issues rather than to the entire proceeding. "The doctrine is invoked when the courts have initial jurisdiction over a claim but when it is likely that the action will require resolution of issues which, under a regulatory scheme, have been placed in the hands of the administrative body." *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 359, 770 P.2d 423 (1989).

This court discussed primary jurisdiction in *Hamilton v. United Telephone Co. of Kansas*, 6 Kan. App. 2d 885, 636 P.2d 202, *rev. denied* 230 Kan. 817 (1982). Hamilton filed an action against a public utility alleging breach of contract and negligence after experiencing problems with the telephone service provided by the utility. Hamilton claimed lost profits and damage to business reputation. The trial court dismissed the action, holding that the KCC had exclusive jurisdiction over the matter.

This court reversed, stating that there was no administrative remedy available to Hamilton because the dispute was "essentially private." 6 Kan. App. 2d at 887. In other words, the KCC did not have the power to determine negligence or breach of contract issues and could not award damages for lost profits or damage to reputation. This court distinguished the breach of contract action before it from cases that must first be brought before the KCC, including cases which "concerned rate orders." 6 Kan. App. 2d at 886-87.

This court stressed that "[w]here there is no administrative remedy, the litigant may proceed directly to district court." 6 Kan. App. 2d at 887. After it had determined that there was no administrative remedy, this court concluded that there was no need for administrative guidance on the issues and did not invoke the primary jurisdiction doctrine. 6 Kan. App. 2d at 887.

This court in *Western Kansas Express* explored the interplay between the two doctrines:

"This doctrine of administrative law [primary jurisdiction] has been defined as the determination of whether a court or an administrative agency has the authority to make an initial rather than a final decision. [Citation omitted.] Primary jurisdiction does not allocate power between courts and agencies to make final determinations but guides the court in deciding whether the court should refrain from exercising

its initial jurisdiction until after an administrative agency has employed its expertise to resolve some question best decided for reasons of uniformity or technical expertise by the agency. [Citation omitted.] The doctrine of primary jurisdiction is different from the exhaustion of remedies requirement in that the exhaustion doctrine requires that judicial action on the claim be withheld when the law provides that such a claim may first be treated by the proper administrative agency. On the other hand, primary jurisdiction is invoked in situations in which the courts have jurisdiction over the claim from the outset but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of the administrative body." 11 Kan. App. 2d at 341-42.

The court noted that "issues which might profit from the expertise of the regulatory agency have already been addressed by the KCC." Further, "[s]ince there was no remedy available to plaintiffs in that forum for the damages they may have sustained, there is no bar erected by the exhaustion doctrine or policy created by 'primary jurisdiction' to prevent the district court's resolution of this case." 11 Kan. App. 2d at 342.

The relationship between the doctrines of exhaustion of remedies and primary jurisdiction is confusing at best. With this in mind, there are two ways of looking at this case. Grindsted asked the district court to interpret the tariff and refund overcharges. The KCC is empowered to do these things; thus, there is an administrative remedy available which must be exhausted prior to judicial review. Grindsted also asked for treble damages under K.S.A. 66-176. The KCC cannot award treble damages under the statute. The district court has jurisdiction over the treble damages claim. However, an award of treble damages is dependent upon a determination that KCP&L incorrectly interpreted its tariff and overcharged Grindsted. Case law indicates that these issues are handled by the KCC, not the district court. The doctrine of primary jurisdiction requires that the district court refer these underlying issues to the KCC.

Both doctrines are implicated in this case. The KCC must first interpret the tariff.

This case is further complicated by the fact that Grindsted also filed a claim with the KCC. As noted earlier, we have now been provided with a certified copy of Grindsted's petition for judicial review of the KCC order dismissing its claim. The district court

considering the petition for judicial review would be the appropriate court to consider Grindsted's claim for treble damages under K.S.A. 66-176 if that court determines Grindsted is entitled to relief in its petition for judicial review.

The district court's order dismissing this action is affirmed.