(109 P.3d 730)
No. 92,696

Virginia Libel, *Plaintiff/Appellant*, v. Union Pacific Railroad and Larry Schmidt, *Defendants*, and Southwest Rail Industries, *Defendant/Appellee*.

Opinion filed April 15, 2005.

*Norbert C. Marek, Jr.*, of Myers, Pottroff & Ball, of Manhattan, for appellant.

*Kevin M. McMaster* and *Scott E. Sanders*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

Before MARQUARDT, P.J., MCANANY, J., and BRAZIL, S.J.

MCANANY, J.: Virginia Libel, who suffered personal injuries when her automobile struck a Southwest Rail Industries (Southwest) railroad car at a crossing, appeals the trial court's summary judgment ruling in favor of Southwest. Because Southwest had no common-law duty to warn Libel, we affirm.

The accident happened while Southwest's railroad car was stopped on the tracks at a railroad grade crossing. Libel brought a negligence action against the Union Pacific Railroad Company (Union Pacific), which maintained the crossing and operated the train, and Larry Schmidt, Jr., its employee. She later amended her petition to add Southwest as a defendant.

Southwest did not manufacture the rail car. It was owned by Southwest but had been leased to another entity at the time of the collision. The rail car was part of a train operated by Union Pacific. Southwest did not have any control over the use of the rail car or the operation of the train at the time of the collision.

Libel claimed that Southwest, knowing the attendant risks, negligently failed to appropriately paint or place reflective or lighted markers on its rail car to warn persons such as Libel when it blocked an unguarded rail crossing. Libel settled with Union Pacific and Schmidt. Southwest moved for summary judgment, which was granted. This appeal followed.

Libel does not challenge the trial court's factual finding upon which it granted summary judgment. Rather, she challenges the trial court's legal conclusion that Southwest had no duty to warn.

The standards for summary judgment are well known and are set forth in K.S.A. 2004 Supp. 60-256(c). The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal, we apply these same rules. *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

*Federal Preemption*

Libel argues the trial court erred in holding that federal law, more specifically 49 U.S.C. § 20106 (2000), preempted state law on the issue of Southwest's duty to warn.

The Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 *et seq.* (2000), was enacted in 1970 in order "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101 (2000). The FRSA allows the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970." 49 U.S.C. § 20103(a) (2000). The Secretary is also given authority to "maintain a coordinated effort to develop and carry out solutions to the railroad grade crossing problem." 49 U.S.C. § 20134(a) (2000). The FRSA contains the following provision regarding preemption:

"Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106 (2000).

There was no applicable provision of the FRSA regarding reflectors or other devices to make rail cars more visible. The parties agree that Congress has not adopted any rules or regulations regarding the visibility of rail cars, although recently a study has been made and regulations were proposed.

Libel cites *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 123 L. Ed. 2d 387, 113 S. Ct. 1732 (1993), and *Norfolk Southern R. Co. v. Shanklin*, 529 U.S. 344, 146 L. Ed. 2d 374, 120 S. Ct. 1467 (2000), to support her argument that there was no federal preemption of her claim. Those suits involved claimed defects in the crossing itself and the operation of the train by the railroad. Neither involved a claimed duty of the rail car owner to install warning reflectors on its rail cars.

In *Pearson v. Columbus and Greenville Ry.*, 737 So. 2d 390 (Miss. App. 1998), a motorist brought an action against a railway company after having run into a freight car that was part of a train stopped at a crossing. The court held that the claim that the crossing was unreasonably dangerous was preempted by the federal law, but the claim that the railway breached its duty to make its rail cars conspicuous was not. The court observed:

"There is evidence that no decision was made to set uniform standards for reflectors. For preemption, what is needed is proof in some form that the agency concluded 'that no such [state] regulation is appropriate. . . .' *Ray* [*v. Atlantic Richfield Co.*], 435 U.S. [151,] 179, [55 L. Ed. 2d 179,] 98 S. Ct. 988 [1978]. Being 'disinclined' as the ICC was in 1970, or finding 'evidence' of slight safety benefits as did the FRA in 1984, does not amount to a decision that occupies the subject matter for preemption purposes. It is when the agency molds inclinations and evidence into a determination that safety would not be enhanced that states become barred from regulating the subject. Similarly, the Fifth Circuit found no preemption from the Federal Railroad Administration's non-decision regarding the walkways beside tracks in railroad yards. *Missouri Pac. R.R. Co. v. Railroad Comm'n of Texas*, 833 F.2d 570, 576 (5th Cir. 1987). The agency had not made a decision to do nothing. It had simply not made a decision.

"We find that the FRA—despite hinting at a position in 1984 and 1988—has in fact made no decision. The Federal Railroad Safety Act permits local rules and standards to continue 'until such time as the Secretary has adopted' a national rule 'covering the subject matter. . . .' 45 U.S.C. § 434. Since Congress in 1994 ordered the FRA to look at the issue, the subject matter may ultimately have congressionally mandated national standards. For now there are no standards, and no FRA decision that there should be no standards.

"We are not holding there is a duty on a railroad, independent of its duty to warn of crossings, to make certain its cars are conspicuous, or if such a duty exists, whether it has been breached here. We are only saying on this appeal from a summary judgment that the claim is not preempted.

"In sum, negligence suits involving railroad-automobile accidents are not as a category of case preempted. If the claimed negligence is based on inadequate warnings of crossings, or excessive speed (*Easterwood*, 507 U.S. 658, 113 S. Ct. at 1743), or inadequate locomotive lighting, those claims are preempted in applicable circumstances. The conspicuousness of freight cars in a situation such as is alleged here, is not preempted." 737 So. 2d at 401.

We adopt the reasoning in *Pearson*. Libel's claim against Southwest has not been preempted by federal law, and the trial court erred in so finding.

*Common-Law Duty*

If federal preemption does not apply, we must then examine state law to determine if such a cause of action may be maintained at common law. Actionable negligence requires the existence of a duty. *Dietz v. Atchison, Topeka & Santa Fe Rwy. Co.*, 16 Kan. App. 2d 342, 345, 823 P.2d 810 (1991), *rev. denied* 250 Kan. 804 (1992). Whether a duty exists is a question of law. *Honeycutt v. City of*

*Wichita*, 251 Kan. 451, 463, 836 P.2d 1128 (1992). Thus, we have plenary review over this issue.

Libel argues the trial court erred in holding Southwest owed no common-law duty to provide a visual warning on its rail car. Libel's reliance on various California cases to support this position is misplaced since they deal with a statutory duty under California law. Nor can Libel successfully analogize the circumstances presented here to a motorist's duty in operating an automobile on the highway. Finding no case addressing the duty of a rail car owner—as distinct from the railroad—at a railroad grade crossing, Libel relies upon *Waits v. St. Louis-San Francisco Rly. Co.*, 216 Kan. 160, 168, 531 P.2d 22 (1975), in which the court stated:

> "Although railroads are not insurers of the safety of persons approaching their tracks for the purpose of crossing, they must exercise due care for the safety of travelers at public crossings. Unusually dangerous conditions prevailing at the crossing may require the railroad to anticipate that the mere presence of the train occupying the crossing will not adequately warn users of the highway. Such special conditions may create an unusual hazard making additional warnings necessary."

Kansas common law imposes upon a railroad the duty to maintain safe grade crossings. "[W]here unusually dangerous conditions prevail at a railroad crossing the unusual hazard may make additional warnings and precautions by the railroad company necessary." *Sexsmith v. Union Pacific Railroad Co.*, 209 Kan. 99, 108, 495 P.2d 930 (1972); accord *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 955 P.2d 1189 (1998).

But Libel has already settled with the railroad and its employee. The instant motion involves the owner of the rail car that was a part of the railroad's train, not the railroad itself. Libel fails to identify any case that places upon an owner of a rail car the duty to provide reflectors or similar warning devices. Nor does she cite any case that characterizes a rail car without reflectors as unreasonably dangerous. To the contrary, in *Morgan v. Bethlehem Steel Corp.*, 135 Ill. App. 3d 242, 90 Ill. Dec. 36, 481 N.E.2d 836 (1985), when the plaintiff contended that a rail car without reflectors was unreasonably dangerous, the court held that such reflectors were not required. The court concluded that a person is required to diligently use the senses of sight and hearing and to exercise a

degree of care commensurate with the known danger in approaching railroad crossings. Thus, since the possibility of a collision between a motorist and the railroad car is a risk which is open and obvious to all, defendants owed no duty to warn. 135 Ill. App. 3d at 247.

We are also reminded that Southwest, the owner of the rail car, did not manufacture the car, had leased the car to another, did not have possession or control over it at the time of the accident, and had no control over the operation of the train or the decision to stop the train with the rail car blocking the crossing. While we recognize that the common law is a living and ever-changing organism, and that its growth may be achieved through judicial decisions (see K.S.A. 77-109), we are not satisfied that the present circumstances warrant the recognition of such a heretofore undocumented cause of action. The trial court did not err in granting summary judgment in favor of Southwest based upon the lack of a common-law duty to warn in these circumstances.

Affirmed.