**UNITED CITIES GAS COMPANY,**
**Plaintiff,**

v.

**BROCK EXPLORATION COMPANY**
**et al., Defendants.**

**Civil Action No. 97–2113–GTV.**

United States District Court,
D. Kansas.

Nov. 13, 1997.

**1382**

James G. Flaherty, Anderson, Byrd, Richeson & Flaherty, Ottawa, KS, for Plaintiff.

J. Scott Pohl, Hinkle, Eberhart & Elkouri, L.L.C., Wichita, KS, Steven D. Gough, John G. Pike, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for Defendants.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action seeking damages arising out of defendants' unlawful sales of natural gas within plaintiff's certified territory. The case is before the court on the parties' cross motions for partial summary judgment (Docs. 14 & 16) relating to the applicable statute of limitations.[1] For the reasons set forth below, the court holds that plaintiff's claims are subject to a three-year statute of limitations and are not extendable by a discovery rule or continuing violation doctrine.

#### I. Background

In 1988, defendant Brock Exploration Company purchased oil and gas leases, natural gas wells, and a gathering system from local producers in Johnson County, Kansas. Brock sold natural gas from these wells to three industrial customers with plants located at or near the Johnson County Industrial Airport. Brock also obtained a tap on the Williams Natural Gas Company's interstate pipeline and transported gas from its own wells to the tap for later resale to its industrial customers.

Each of Brock's industrial customers— Dazey Corporation, Grindsted Products, Inc., and Superior Asphalt—are located within the "certificated area" of plaintiff United Cities Gas Company. A "certificated area" is a region in which the Kansas Corporation Commission ("KCC") has granted a common carrier or public utility the authority to transact business falling within the commission's regulatory jurisdiction. *See* K.S.A. 66–104 (discussing entities and activities subject to KCC's supervision). The KCC confers this authority by issuing a certificate of convenience and necessity. *See* K.S.A. 66–131.

In May 1987, approximately one year before Brock purchased the oil and natural gas infrastructure described above, Union Gas System, Inc., plaintiff's predecessor-in-interest, entered into a gas purchase contract with Williams Production Company. Under that agreement, Williams promised to sell unspecified quantities of natural gas to Union Gas. The contract also contained a provision in which Williams specifically reserved its right to sell natural gas to certain other customers. At least one of those customers—Dazey Corporation—purchased natural gas from Brock as well after Brock entered the market in the industrial airport area.

On September 26, 1995, United Cities filed a complaint with the KCC alleging that Brock had contravened the Kansas Public Utilities Act, specifically K.S.A. 66–131, by transacting the business of a public utility without obtaining the requisite certificate of convenience and necessity. On May 29, 1996, following full briefing and an evidentiary hearing, the KCC issued an Order concluding that Brock's sales of natural gas in the industrial airport area constituted the business of a public utility. The KCC further determined that Brock's operations amounted to an unlawful bypass of United Cities' local distribution facilities. Based on those findings, the KCC ordered Brock to obtain a certificate of convenience and necessity to transact the business of a natural gas public utility.

Brock subsequently petitioned for a reconsideration of the KCC's Order. On July 8, 1996, although denying Brock's petition for reconsideration, the KCC clarified its prior Order. Specifically, the KCC noted that if Brock did not change its operations in any way, the company would have to secure a certificate of convenience and necessity to operate as a public utility; if, however, Brock

---

1. After defendant Brock Exploration Company filed a motion for partial summary judgment (Doc. 16), plaintiff amended its complaint to include Brock's subsidiaries as additional defendants. Because plaintiff's claims against Brock's subsidiaries rest on the same liability theories as the claims against Brock, the court will treat Brock's motion as having been filed by all of the defendants.

chose to deliver natural gas directly to United Cities' local distribution facilities for subsequent redelivery to Brock's customers, Brock would be functioning as a gas marketer rather than a public utility and would need no certificate from the KCC.

On August 6, 1996, Brock appealed the KCC's Orders to the Shawnee County, Kansas District Court. On November 7, 1996, while Brock's appeal was still pending, United Cities filed the instant action in the District Court of Shawnee County, Kansas. Brock removed the case to federal court on March 3, 1997 after obtaining a particularized statement of United Cities' requested damages.[2] On June 24, 1997, Judge Terry L. Bullock of the Shawnee County District Court issued an opinion upholding the KCC's findings.

## II. Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*,

477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

The dispute raised in the parties' partial summary judgment motions centers exclusively around the applicable statute of limitations governing plaintiff's claim for damages. Plaintiff predicates its claim on K.S.A. 66–176. This statute provides:

**Damages for violation; attorney fees.** Any public utility or common carrier which violates any of the provisions of law for the regulation of public utilities or common carriers shall forfeit, for every offense, to the person, company, or corporation aggrieved thereby, the actual damages sustained by the party aggrieved, together with the costs of suit and reasonable attorney fees, to be fixed by the court. If an appeal is taken from the judgment or any part thereof, it shall be the duty of the appellate court to include in the judgment additional reasonable attorney fees for services in the appellate court or courts.

*Id.* Defendants contend that the one-year statute of limitation for actions based upon a "statutory penalty or forfeiture" is applicable here. *See* K.S.A. 60–514(c). Plaintiff insists that K.S.A. 66–176 is not a penalty or forfeiture statute and that a three-year statute of limitations governs the case. *See* K.S.A. 60–512(2).

### A. Is K.S.A. 66–176 a "penalty or forfeiture" statute?

Prior to the Kansas legislature's amendment of the statute in 1995, courts universally recognized that lawsuits premised on K.S.A. 66–176 were actions upon a "statutory penalty or forfeiture" and, therefore, subject to a one-year limitations period. *See Rothwell v. Werner Enters., Inc.*, 859 F.Supp. 470, 477–79 (D.Kan.1994); *Kearney v. Kansas Pub.* Serv. Co., 233 Kan. 492, 665 P.2d 757, 770 (1983); *Grindsted Prods., Inc. v. Kansas City Power & Light Co.*, 21 Kan.App.2d 435,

**2.** The court's jurisdiction is predicated on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332.

901 P.2d 20, 25 (1995); *Western Kan. Express, Inc. v. Dugan Truck Line, Inc.*, 11 Kan.App.2d 336, 720 P.2d 1132, 1135–36 (1986). In reaching this conclusion, the cases focused on the statute's treble damages provision. In a bill effective July 1, 1995, however, the legislature eliminated the reference to treble damages.[3]

### 1. Penalty Statute

■ Plaintiff contends that the amended version of K.S.A. 66–176 can no longer be considered a penal statute. Defendants respond that although K.S.A. 66–176 is less punitive now than it was in its pre-amended form, the legislature did not intend to abrogate the statute's penal character. Defendants specifically point to the amended statute's retention of the provision mandating attorney fees to the aggrieved party.

■ Defendants are correct that under the "American Rule," first articulated by the Supreme Court in *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796), a prevailing party generally may not recover its attorney fees in the absence of a statute or enforceable contract providing for such an award. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir.1997) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616–17, 44 L.Ed.2d 141 (1975), and *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 126, 94 S.Ct. 2157, 2163–64, 40 L.Ed.2d 703 (1974)). The mere fact that a statute mandates an attorney fee award to the prevailing party, however, does not make the statute punitive in nature. In *Kelly v. Primeline Advisory, Inc.*, 256 Kan. 978, 889 P.2d 130 (1995), for example, the Kansas Supreme Court held that the Kansas Securities Act, K.S.A. 17–1268(a), which authorizes aggrieved parties to recover their attorney fees as well as a 15% interest rate on their damages, does not amount to a penal statute. *Id.* 889 P.2d at 134–35.

### 2. Forfeiture Statute

■ Moreover, K.S.A. 66–176 cannot be classified as a forfeiture statute. The term "forfeiture" refers to the divestiture of specific property or the loss of a position or personal right without compensation, in consequence of some default or act forbidden by law. 37 C.J.S. *Forfeitures* §§ 2 & 4 (1997). *Accord Vanderpool v. Higgs*, 10 Kan.App.2d 1, 690 P.2d 391, 393 (1984) ("A forfeiture is generally an enforced and involuntary loss of a right in consequence of an offense or default."). As amended, K.S.A. 66–176 subjects public utilities and common carriers to liability only for the "actual damages" of an aggrieved party. The statute embraces no forfeiture.

■ It is true that the legislature retained the word "forfeit" in describing K.S.A. 66–176's liability provisions. The court, however, does not believe that the use of that term, standing alone, converts the action into one predicated upon a statutory forfeiture. To the contrary, the word "forfeit" in the amended statute appears out of place and inconsistent with the remedies now available. Unfortunately, the legislative history of K.S.A. 66–176 gives the court no guidance in navigating through the 1995 amendments.[4] The only documents the court has been able to unearth indicate the amendments had their genesis in a proposal from an electric and gas utility task force charged with "making recommendations for policy changes in

---

**3.** The pre-amended version of the statute read:

> **Forfeiture for violations; attorney's fees.** Any public utility or common carrier which shall violate any of the provisions of law for the regulation of such public utilities or common carriers shall forfeit, for every offense, to the person, company, or corporation aggrieved thereby, *three times the actual damages* sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney fee, to be fixed by the court; and if an appeal be taken from the judgment or any part thereof, it shall be the duty of the appellate court to include in the judgment additional reasonable

attorney's fee for services in the appellate court or courts.

K.S.A. 66–176 (1992) (emphasis added).

**4.** The Revisor of Statutes apparently felt the legislature's amendments warranted replacing the "forfeiture" reference in the statute's title with the word "damages." Although the Revisor's title forms no part of the statute itself and should not be construed as expressing definitive legislative intent, the title may be one indication of the legislature's purpose in adopting a statute. *See State v. Schlein*, 253 Kan. 205, 854 P.2d 296, 305 (1993); *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 610 P.2d 1107, 1111 (1980).

the statutes regulating electrical and natural gas public utilities." Kansas Legislative Research Department, Supplemental Note on House Bill No.2095, 1995 Session.

The case law applying K.S.A. 60–514(c)'s one-year limitation period serves as a similarly dim beacon. Other than public utility/common carrier lawsuits centered around the pre-amended version of K.S.A. 66–176, the only reported case invoking the "statutory penalty or forfeiture" one-year statute of limitation involved the fine of a district court clerk for refusing, in violation of state law, to release funds to a minor plaintiff's guardian that the clerk had received in his official capacity. *See Peavler v. Wichita Transp. Co.*, 166 Kan. 348, 202 P.2d 191 (1949) (applying statutory pre-cursor to K.S.A. 60–514(c)).[5] In finding the "amercement" provision "highly penal" in nature, the *Peavler* court noted that the statute required no actual damages to have been suffered; it exposed officials to identical liability for all violations, regardless of intent or effect. *Id.* 202 P.2d at 193. No such situation is present here.

Defendants contend that in *Rothwell*, Judge Lungstrum held K.S.A. 66–176's invocation of the word "forfeit" to be independently sufficient to classify the statute as a forfeiture provision. The court disagrees. Although Judge Lungstrum remarked that the use of the word "forfeit" suggested a likely "statutory forfeiture" categorization, he ultimately grounded his holding in the pre-amended statute's treble damages provision. *Rothwell*, 859 F.Supp. at 478. This court does not believe he would reach a similar conclusion in interpreting the amended statute.

Defendants further cite the general rule of statutory construction that "[i]f the language used is plain and unambiguous the court should follow the intent expressed by the words within the statute and not look beyond them in search of some other purpose or meaning." *Phillips v. Vieux*, 210 Kan. 612, 504 P.2d 196, 201 (1972). This doctrine, however, presupposes that the statutory language is internally consistent. Statutory language is often influenced by its context and the court cannot merely view isolated phrases in a vacuum. The court must look to the provisions of the whole law as well as to its object and policy. *See Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357–58, 93 L.Ed.2d 216 (1986).

Viewing the statute in its entirety, the court concludes that K.S.A. 66–176 is not a forfeiture statute. The elimination of the treble damages provision in the amended statute rendered any reference to forfeiture meaningless.[6] The retention of the word "forfeit" in the statute can only be described as an inadvertent legislative omission or a fundamentally inaccurate characterization of the statute's remedial scheme. Either way, a lawsuit predicated on K.S.A. 66–176 must be classified as an "action upon a liability created by a statute other than a penalty or forfeiture" and, therefore, subject to the three-year statute of limitations set forth in K.S.A. 60–512(2).

## B. Are Plaintiff's Claims Susceptible to Equitable Tolling?

In *Wagher v. Guy's Foods, Inc.*, 256 Kan. 300, 885 P.2d 1197 (1994), the Kansas Supreme Court articulated the general analysis courts are to use in assessing the accrual date of cases with an administrative exhaustion prerequisite. The plaintiff in *Wagher* had submitted a number of employment applications to the defendant seeking a route sales driver position. The defendant refused to hire her despite a number of openings, telling her that she lacked experience for the job. *Id.* at 1199–1200. Thirty-nine days after receiving the defendant's explanation, the plaintiff filed a complaint with the Kansas

---

5. Although a number of federal district court cases have held K.S.A. 60–514(c) applicable to Kansas Consumer Protection Act suits, *see Wight v. Agristor Leasing*, 652 F.Supp. 1000, 1018 (D.Kan.1987) and *AgriStor Leasing v. Meuli*, 634 F.Supp. 1208, 1218 (D.Kan.1986), the Kansas Court of Appeals rejected their analysis in *Haag v. Dry Basement, Inc.*, 11 Kan.App.2d 649, 732 P.2d 392 (1987).

6. Because the 1995 amendments merely affected the statutory remedies available, the current statute is accorded retroactive application. *Nitchals v. Williams*, 225 Kan. 285, 590 P.2d 582, 587 (1979).

Human Rights Commission. *Id.* at 1200. The commission failed to issue a ruling on her claim for more than two years. Approximately eight months after the commission finally dismissed plaintiff's administrative complaint, she filed suit in state court under the Kansas Act Against Discrimination ("KAAD"). *Id.*

The Kansas Supreme Court held that, although the statute of limitations began to run as soon as the defendant explained to the plaintiff the purported reasons for its employment decision, the statute was tolled during the pendency of the plaintiff's administrative proceedings. *Id.* at 1204–05. The court noted that exhaustion of administrative remedies is a prerequisite to suit under the KAAD, and the statute of limitations cannot run during a period in which the plaintiff is precluded from prosecuting her case. *Id.* at 1206.

■ In the instant action, United Cities filed its administrative claim against Brock with the KCC on September 26, 1995. After the KCC declared Brock in violation of Kansas law, Brock sought reconsideration from the commission. Upon receiving an unfavorable ruling on its reconsideration petition, Brock appealed the KCC's order to the Shawnee County District Court. The state court denied the appeal on June 24, 1997. As defendants concede, under the *Wagher* analysis, the statute of limitations on plaintiff's suit was tolled from September 26, 1995 through June 24, 1997. Because plaintiff commenced this action on November 7, 1996, a point at which the time clock on its claim had ceased ticking, the three-year statute of limitations of K.S.A. 60–512(2) must be gauged from September 26, 1995. Accordingly, the court finds that plaintiff may recover only for those injuries accruing on or after September 26, 1992.

■ Plaintiff attempts to circumvent this restrictive time bar by invoking a hybrid administrative tolling concept as well as a discovery rule and continuing violation doctrine. Plaintiff maintains that these equitable tolling theories permit the company to recover damages from the moment that defendants' illegal activities began. The Kansas Supreme Court has never addressed whether a claim under K.S.A. 66–176 is sub-

ject to any equitable tolling provisions. This court, therefore, must attempt to determine how the state supreme court would rule on such an argument. *See Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967) (federal court, in action arising under state law upon which state supreme court has not ruled definitively, must predict how state supreme court would decide case).

### 1. Hybrid Administrative Tolling Theory

■ Plaintiff first argues that the statute of limitations did not commence on its claim until its right to maintain a legal action first arose. Because the Kansas Court of Appeals has held that a lawsuit predicated on K.S.A. 66–176 may be initiated in district court only after the KCC has determined the defendant public utility to be in violation of state regulatory laws, *Grindsted Products,* 901 P.2d at 25, plaintiff insists that it may seek damages arising as far back as 1988. The court rejects this argument. Under plaintiff's theory, a litigant could delay asserting its rights before an administrative tribunal indefinitely while its damages continued to grow. The litigant, in fact, would have a disincentive to act promptly and the underlying purposes of statutes of limitations, such as avoiding stale claims and settling contingent obligations, would be thwarted.

In support of its theory, plaintiff relies on *Whittenburg v. L.J. Holding Co.,* 830 F.Supp. 557 (D.Kan.1993), a case in which several purchasers of business jets sued the jet manufacturer for fraudulent and negligent misrepresentation. At the time of negotiations, the manufacturer allegedly had misrepresented the number of jets available for delivery. *Id.* at 560–61. Relying on those representations, the purchasers agreed to a price far in excess of the jets' true market value. *Id.* at 561. After the purchasers filed suit, the manufacturer invoked the two-year statute of limitations for such claims, contending that the actual number of jets available for delivery was known to the purchasers more than two years before the commencement of the lawsuit. *Id.* at 561–62. The court, in rejecting the manufacturer's argument, held that "[a] cause of action does not accrue for pur-

poses of the limitation period until the right to maintain a legal action arises; i.e., when the plaintiff could first have filed and prosecuted the action to a successful conclusion." *Id.* at 562 (citing *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 56, *modified on other grounds,* 247 Kan. 699, 803 P.2d 205 (1990)).

*Whittenburg* is readily distinguishable from the instant action. First, *Whittenburg* revolved around allegations of fraud and misrepresentation, attributes nowhere appearing in the case at bar. Second, the statute of limitations dispute in *Whittenburg* arose in the context of a constitutional standing issue. The court noted that the purchasers had incurred no substantial injury (thereby implicating no justiciable case or controversy) prior to tendering the balance of the purchase price for the planes. The court then held that although the plaintiffs should have discovered the fraud several months before taking delivery, their injuries did not arise until final delivery and payment. *Id.* at 562–63. In the case at bar, plaintiff suffered legally cognizable injuries the moment defendants began selling natural gas within plaintiff's certified territory. The fact that plaintiff did not file an administrative claim with the KCC challenging defendants' conduct for nearly seven years after the sales commenced does not mean that plaintiff's injuries accrued only upon the issuance of a KCC ruling. To the contrary, plaintiff's dilatory pursuit of its legal rights is irrelevant to the accrual inquiry.

### 2. Discovery Rule

 Plaintiff next contends that the discovery rule is applicable to its claims. Plaintiff suggests that because it did not learn of defendants' illegal activities until September 1994, any claim could not have accrued prior to that time. The court rejects this argument.

The Kansas legislature has codified a discovery rule applicable to multiple types of cases. *See* K.S.A. 60–513(b). Under that statute, a cause of action does not accrue "until the act giving rise to the cause of action first causes substantial injury." *Id.* The statute further provides that "if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." *Id.*

Unlike K.S.A. 60–513, however, the statute of limitation at issue in this case—K.S.A. 60–512(2)—offers no indication when the limitation period begins to run. The Kansas Supreme Court confronted a similar issue in *Kelly, supra.* In that case, two investors asserted claims of securities fraud against, *inter alia,* their financial planner and his employer pursuant to the civil liability section of the Kansas Securities Act, K.S.A. 17–1268(a). The court framed the issue on appeal as whether a fraud-based statutory securities action accrues upon the discovery of the fraud or at the time of sale of the security. *Kelly,* 889 P.2d at 132. After examining the relevant case law and legislative history, the court concluded that the statute of limitations on the fraud-based cause of action did not commence until the plaintiffs discovered, or reasonably should have discovered, the alleged fraud. *Id.* 889 P.2d at 137. In reaching that conclusion, the Kansas Supreme Court compared the plaintiffs' suit to a common-law fraud action. Noting that the legislature had specifically provided a discovery rule for common-law fraud, the court reasoned that the legislature must have intended for a discovery rule to apply to statutory fraud-based cases as well. *Id.*

Plaintiff contends that a discovery rule must apply to the case at bar under the *Kelly* analysis. The court disagrees. The primary rationale for the *Kelly* holding—the fraudulent conduct undergirding the investors' claims—is not present here. Fraud claims are particularly well-suited to a discovery rule because the injuries and acts causing the injuries are highly difficult to detect. The defendants' illegal activities for which plaintiff seeks damages here, however, are easily discernable.

Plaintiff argues that, although its predecessor, Union Gas, was aware the defendants were selling and delivering natural gas within the industrial airport area as far back as May 1987, it believed the defendants were acting lawfully pursuant to K.S.A. 66–104's "private use" exception. Plaintiff claims that, under the "private use" exception, entities may lawfully bypass the local distribu-

tion company by purchasing gas directly at the wellhead and transporting it through their own pipeline. Even if plaintiff's legal interpretation is correct, a matter upon which the court expresses no opinion, the discovery rule remains inapplicable. Plaintiff has not alleged that defendants ever misrepresented the nature of their activities or inflicted damages that could not be detected immediately through the exercise of reasonable diligence.

The uncontroverted facts of this case reveal that plaintiff simply opted to proceed with its operations until 1994 under an erroneous assumption that defendants' sales of natural gas violated no state laws. Plaintiff's lack of diligence in investigating defendants' conduct does not serve as an adequate basis for extending the discovery rule to statutory violations centering around the regulation of public utilities and common carriers. Moreover, the Kansas Court of Appeals recently held that the state legislature's creation of a statutory discovery rule for specific causes of action suggests the rule is not intended to apply to cases falling outside that statute. *See Souder v. Garver (Estate of Watson)*, 21 Kan.App.2d 133, 896 P.2d 401, 404 (1995) (refusing to apply a discovery rule to probate case). Accordingly, the court holds that plaintiff may not avail itself of the discovery rule in this lawsuit.

### 3. *Continuing Violation Doctrine*

▆▆▆ Plaintiff's final argument is that the continuing nature of defendants' unlawful conduct allows plaintiff to recover damages from the moment defendants' activities began. Under the continuing violation doctrine, a plaintiff may challenge incidents occurring outside the statutory limitation period if such incidents are closely related to events that occurred within the statute of limitations. *See Mascheroni v. Board of Regents*, 28 F.3d 1554, 1560–61 (10th Cir.1994); *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir.1993). This doc-

trine, however, has no application in the case at bar.

As defendants correctly point out, the continuing violation doctrine has been applied very infrequently outside the Title VII employment discrimination context. *See, e.g., LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1105 n. 3 (6th Cir.1995) (refusing to invoke doctrine in 42 U.S.C. § 1983 claim); *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 n. 27 (5th Cir.1993) (same).[7] The limited areas in which courts have broadened the doctrine's application have involved explicit statutory language, unequivocal legislative intent, or contractual arrangements. *See generally* Albert C. Lin, *Application of the Continuing Violations Doctrine to Environmental Law*, 23 Ecology L.Q. 723, 745–54 (1996); James R. MacAyeal, *The Discovery Rule and the Continuing Violation Doctrine As Exceptions to the Statute of Limitations for Civil Environmental Penalty Claims*, 15 Va. Envtl. L.J. 589, 615–59 (1996). The statute at issue here contains no language suggesting that the continuing violation doctrine may be applicable nor does the legislative history offer such an indication.

In support of its argument, plaintiff relies exclusively on *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 723 F.Supp. 567 (D.Kan. 1989). In that case, the plaintiff asserted claims of restraint of trade, monopolization, unfair competition, tortious interference with contract, and business libel. Articulating no rationale for its decision other than a citation to a Seventh Circuit case, the court held that the plaintiff's claims were timely under the theory that "a statute of limitation does not begin to run on a continuing wrong until the wrong is 'over and done with.'" *Id.* at 570 (citing *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir.1983)).

This court finds *Manildra Milling* unpersuasive. First, the *Taylor* decision upon

---

7. In an unreported decision, the Tenth Circuit provided a survey of the cases addressing the applicability of the continuing violation doctrine outside the Title VII employment discrimination context. *See Rassam v. San Juan College Bd.*, No. 95–2292, 1997 WL 253048, at *3 (10th Cir. May 15, 1997). Although not deciding the issue,

the court noted that the Tenth Circuit has previously implied that the continuing violation doctrine is a concept confined to employment discrimination lawsuits. *Id.* (citing *Pike v. City of Mission*, 731 F.2d 655, 660 (10th Cir.1984) (en banc)).

which the *Manildra Milling* court based its continuing violation holding involved allegations of copyright infringement that were permeated by fraudulent concealment. *Taylor,* 712 F.2d at 1118. The Seventh Circuit reasoned that the inherent difficulty in uncovering the infringement justified the application of the continuing violation doctrine. *Id.* at 1118–19. As this court noted previously, there are no allegations of fraud, misrepresentation, or concealment in the instant action.

Second, the overwhelming majority of circuits have rejected the *Taylor* analysis, *see, e.g., Hotaling v. Church of Jesus Christ of Latter–Day Saints,* 118 F.3d 199, 202 (4th Cir.1997); *Makedwde Publ'g Co. v. Johnson,* 37 F.3d 180, 181–82 (5th Cir.1994); *Stone v. Williams,* 970 F.2d 1043, 1049–50 (2d Cir. 1992); *Hoste v. Radio Corp. of Am.,* 654 F.2d 11, 11 (6th Cir.1981) (per curiam); *Underwater Storage, Inc. v. United States Rubber Co.,* 371 F.2d 950, 955 (D.C.Cir.1966), as has Judge Lungstrum in a case arising under Kansas law. *See Phillips USA, Inc. v. Allflex USA, Inc.,* 869 F.Supp. 842, 853 n. 6 (D.Kan.1994). The author of the *Manildra Milling* opinion, in fact, recently acknowledged that courts generally have not extended the continuing wrong theory beyond the facts of *Taylor* and often have rejected the theory as a matter of law. *See In re Indep. Serv. Orgs. Antitrust Litig.,* 964 F.Supp. 1469, 1478 (D.Kan.1997) (citations omitted).

The court concludes that under the facts of this case, the continuing violation doctrine would do little more than render the statute of limitations superfluous and allow plaintiff to recover damages for a period when it unreasonably stood on its rights. The doctrine is a narrow concept that must be limited to a distinct group of cases and it is inapplicable to the case at bar.

IT IS, THEREFORE, BY THE COURT ORDERED that the motions for partial summary judgment of plaintiff (Doc. 14) and defendants (Doc. 16) are each granted in part and denied in part.

IT IS FURTHER ORDERED that plaintiff may recover damages only for those injuries incurred on or after September 26, 1992.

**IT IS SO ORDERED.**