Helen PATTERSON, Administratrix of the Estate of Thomas F. Patterson, Deceased, and Helen Patterson, Individually and as an Heir to Thomas F. Patterson, Deceased, Plaintiff,

v.

DAHLSTEN TRUCK LINE, INC., et al., Defendants.

No. 99–2422–JWL.

United States District Court, D. Kansas.

Dec. 28, 2000.

James M. Yeretsky, Yeretsky & Maher, L.L.C., Kansas City, MO, Larry M. Amoni, Aurora, IL, for Plaintiff.

Robert A. Horn, Sarah Yehle Fulkerson, K. Christopher Jayaram, Horn, Aylward & Bandy LLC, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This is a diversity action which arises out of a collision between a semi-tractor trailer driven by defendant Kenneth L. Barry and an automobile driven by plaintiff's decedent, Thomas F. Patterson. The semi-tractor trailer was owned by defendant Dahlsten Truck Line, Inc. ("Dahlsten"), who concedes that Mr. Barry was driving it in the ordinary course of his employment. Plaintiff contends that one or more negligent acts of Mr. Barry or Dahlsten caused the fatal accident.

A number of motions are currently before the court. First, plaintiff has filed a motion for leave to file an amended complaint, attaching the proposed amended complaint to her motion (Doc. 50). Second, defendants have filed a motion to amend the Pretrial Order (Doc. 55). Third, Dahlsten has moved for summary judgment "as to plaintiff's claims for negligent hiring, training, retention, and/or supervision" (Doc. 44). Fourth, plaintiff has moved for summary judgment "on the issue of negligence of defendants Barry and Dahlsten and the lack of contributory negligence of [Mr. Patterson]" (Doc. 51). Fifth, Plaintiff has also filed a motion seeking to amend her motion for summary judgment in order to number the fact paragraphs set forth in the motion (Doc. 67). Sixth, defendants have move to strike plaintiff's expert witness designations (Doc. 70). Finally, defendants have moved the court for an order sanctioning plaintiff for failing to comply with a notice of deposition (Doc. 74).

For the reasons stated below, plaintiff's motion for leave to file an amended complaint is granted, defendants' motion to amend the Pretrial Order is granted, Dahlsten's motion for summary judgment is denied, plaintiff's motion for summary judgment is denied, plaintiff's motion seeking to amend her motion for summary judgment is granted, defendants' motion to strike plaintiff's expert witness designations is granted, and defendants' motion for sanctions is granted.

● **Facts**

The uncontroverted facts relevant to the current motions are relatively sparse. On February 11, 1999, at approximately 1:35 p.m., a tractor trailer rig driven by Mr. Barry and a car driven by Mr. Patterson collided on a two-lane highway outside of Home, Kansas. More specifically, after the car, which was proceeding in the eastbound lane, passed the tractor, which was proceeding in the westbound lane, the car collided with the trailer that was being pulled by the tractor. At the time of the crash, blowing snow created "white out" conditions and snow and ice had accumulated on the highway. Mr. Barry had just down-shifted two gears and was in the process of "stab braking" in order to slow

the tractor trailer so that it would not hit a pickup truck which was traveling at a slower pace in the same lane. Mr. Barry was driving the tractor trailer in the course and scope of his employment with Dahlsten Truck Lines.

Plaintiff filed this action on September 16, 1999, alleging that the negligent acts of Mr. Barry and/or Dahlsten (individually or under a theory of respondeat superior) caused the accident.

● **Discussion**

There are seven motions currently pending before the court. It troubles the court to note, however, that five of the seven motions have gone completely unresponded to by the non-moving party. D. Kan. R. 7.1(b) prescribes a ten day time period for responding to non-dispositive motions and a twenty day time period for responding to motions to dismiss or for summary judgment. "If a respondent fails to file a response within the time required by Rule 7.1(b), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." D. Kan. R. 7.4. The time periods set forth by Rule 7.1(b) have clearly passed for each of the unopposed motions. Thus, the court grants these motions as uncontested.

First, plaintiff's motion titled Motion for Leave to File a First Amended Complaint (Doc. 50), filed on October 16, 2000, is granted. Because the Final Pretrial Order and First Amended Pretrial Order supercede all pleadings, however, the court will construe plaintiff's motion as a motion for leave to file amendments to the First Amended Pretrial Order. Plaintiff may file an Addendum to the First Amended Pretrial Order, incorporating the new matters which she set out in her proposed Amended Complaint attached to her motion. The Addendum shall be filed no later than January 16, 2000.

Second, defendants' Motion to Amend the Pretrial Order (Doc. 55), filed on October 30, 2000, is granted. Defendants may file an Addendum to the First Amended Pretrial Order, incorporating the three specific amendments requested in their motion. The Addendum shall be filed no later than January 16, 2000.

Third, plaintiff's Motion for Leave to File Amendment to Motion for Summary Judgment (Doc. 67), filed on November 15, 2000, is granted. The amended motion simply numbers the paragraphs that state material facts in plaintiff's motion for summary judgment. In ruling on plaintiff's motion for summary judgment below, the court has examined plaintiff's Amended Motion for Summary Judgement, which was attached to plaintiff's motion seeking leave to amend.

Fourth, defendants' Motion to Strike Plaintiff's Expert Witness Designations (Doc. 70), filed on November 17, 2000, is granted. Plaintiff's designation of expert witnesses, provided defense counsel on October 31, 2000, is stricken, and plaintiff is prohibited from utilizing witnesses mentioned in the designation to introduce "expert" testimony at trial.

Fifth, defendants' Motion for F.R.C.P. 37 Sanctions (Doc. 74), filed November 20, 2000, is granted. As a sanction for plaintiff's failure to comply with the notice of deposition issued on September 21, 2000, the court prohibits plaintiff from supporting her claims for damages with testimony of any witness that has failed to appear for deposition. Moreover, plaintiff shall pay the reasonable expenses, including attorney's fees, caused by plaintiff's failure to produce said witnesses.

The court believes that such treatment of the above motions is fair, in light of the parties' ongoing pattern of untimeliness and complete failure to file responses to the motions filed by their counterparts. The two remaining motions before the court, while not unresponded to, are also tainted by plaintiff's failure to meet deadlines. First, defendant Dahlsten's Motion for Partial Summary Judgment (Doc. 44), filed on October 10, 2000, was not responded to by plaintiff until November 7, 2000 five days after the November 2 deadline imposed by Rule 7.1(b). Second, plaintiff's Motion for Partial Summary Judgment

(Doc. 51), filed on October 13, 2000, was filed three days after the dispositive motion deadline set in the Final Pretrial Order. The court could decide these motions in defendants' favor based solely on plaintiff's untimeliness, but the dispositive nature of the motions distinguish them from the motions granted above. Moreover, some action, although late, was taken by plaintiff with regard to these summary judgment motions, in contrast to the motions discussed above which were completely unresponded to. Thus, the court will proceed to address the merits of these motions.

● **Defendant Dahlsten's Motion for Summary Judgment**

Dahlsten moves the court to enter summary judgment "as to plaintiff's claims for negligent hiring, training, retention, and/or supervision" (Doc. 44). Dahlsten asserts that "when a[n] [employer] admits respondeat superior, it is improper to permit the plaintiff to also proceed against the employer under the doctrines of negligent hiring training, retention, or supervision." The court considers Dahlsten's argument below and concludes that summary judgment must be denied.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if

"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *See Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.1999); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

■ Dahlsten premises its motion for summary judgment on the court's ruling in *Rothwell v. Werner Enterprises, Incorporated*, 859 F.Supp. 470 (D.Kan.1994) (superseded on other grounds as recognized by *United Cities Gas Co. v. Brock Exploration Co.*, 984 F.Supp. 1379 (D.Kan. 1997)). In *Rothwell*, the court was asked to determine whether Kansas courts[1]

---

**1.** Jurisdiction in both *Rothwell* and in the present case is premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332. Thus, the court must apply Kansas law in an effort

to reach the same result a Kansas court would reach. *See Adams–Arapahoe Sch. Dist.*

would "allow a plaintiff to proceed against an employer on a separate theory of negligent hiring, training, retention or supervision ... where a defendant employer has admitted responsibility for the employee's actions."[2] *Id.* at 473. Finding no Kansas case which had specifically addressed the issue, the court turned to case law from other jurisdictions for guidance. The court found that "a clear majority of courts have held, when faced with factual circumstances analogous to this case, that if a defendant admits liability on a theory of respondeat superior, it is improper to permit plaintiff to also proceed on a theory of liability of the employer under the doctrine of negligent hiring, training, retention or supervision." *Id.* at 474 (citing *McHaffie v. Bunch*, 1994 WL 72430, at \*7–12, (Mo. App. S.D. March 11, 1994); *Wise v. Fiberglass Systems, Inc.*, 110 Idaho 740, 718 P.2d 1178, 1181 (1986); *Clooney v. Geeting*, 352 So.2d 1216, 1220 (Fla.App.1977); *Willis v. Hill*, 116 Ga.App. 848, 159 S.E.2d 145 (1967); *Houlihan v. McCall*, 197 Md. 130, 78 A.2d 661 (1951)). The court concluded that "Kansas courts would fall in line with the majority of jurisdictions and would find it improper to allow plaintiff in this case to proceed under a theory of negligent hiring or retention where defendants have admitted liability on a theory of respondeat superior."[3] *Id.* Based on this decision, Dahlsten argues that "this Court

must grant Dalsten partial summary judgment as to plaintiff's negligent hiring, training, retention, and supervision allegations because the defendants do not contest respondeat superior liability and because plaintiff's allegations do nothing more than provide an additional and alternative basis for linking defendant Barry's conduct to defendant Dahlsten."

The flaw in Dahlsten's argument is that the rule taken from *Rothwell* is no longer good law. Since *Rothwell* was decided in 1994, the Kansas Supreme Court has had an opportunity to examine the issue. In *Marquis v. State Farm Fire and Casualty Company*, Barbi Marquis was injured when the car that she was driving was struck by a pickup truck driven by Jerry Auck, an employee of Fresh Approach Cleaning Professionals ("Fresh Approach"), while acting in the course and scope of his employment. 265 Kan. 317, 318, 961 P.2d 1213, 1215 (1998). State Farm Insurance Company, Fresh Approach's insurer, sought to bar Ms. Marquis from proceeding against Fresh Approach under the theory of negligent hiring, retention, or supervision because State Farm had admitted that Mr. Auck was an employee acting within the scope of his employment and, therefore, the respondeat superior liability of Fresh Approach had already been established.[4] 962 P.2d at 1224.

---

No. 28–J v. GAF Corp., 959 F.2d 868, 870 (10th Cir.1992).

2. Like the case at bar, *Rothwell* involved a motor vehicle accident in which the plaintiff brought a negligence claim against a driver-employee and a separate negligence claim against the driver's employer. The plaintiff was injured when the semi-tractor trailer driven by the employee collided with a construction "bucket truck" in which the plaintiff was working, knocking the plaintiff to the street below. The employer conceded that the driver was acting within the scope of his employment at the time of the incident, and that, if the driver was found negligent, the employer was liable on a theory of respondeat superior.

3. The court also recognized the possibility that a factual situation could arise in which a claim for negligent hiring, training, retention,

or supervision could be brought as an independent basis for compensatory relief, but found that, on the facts before it, the plaintiff's claims turned solely on the appropriateness of the driver's acts. *Rothwell*, 859 F.Supp. at 475 ("If, in fact, [the driver] did not act in a negligent or wanton manner ... or if his conduct was not the proximate cause of [plaintiff's] injury, it is irrelevant whether or not he was negligently hired or retained.").

4. Ms. Marquis had previously asserted claims of negligence against Mr. Auck and against Fresh Approach under the respondeat superior theory. These claims were settled, with Ms. Marquis receiving $100,000, prior to the suit bringing claims of negligent hiring, retention, or supervision. *See Marquis*, 961 P.2d at 1217.

In ruling on State Farm's motion, the Kansas court recognized that the majority of jurisdictions preclude a plaintiff from proceeding against an employee on a negligent hiring, supervision, or entrustment theory where liability under respondeat superior has been admitted, so as to avoid confusion, wasted judicial resources, and the introduction of inflammatory evidence irrelevant to any contested issue. *See id.* The court stated, however, that "other jurisdictions, including Kansas, have found that an admission that the employee was acting within the scope of his or her employment does not preclude an action for both respondeat superior and negligent entrustment or negligent hiring, retention, or supervision." *Id.* (citing *Kansas State Bank & Tr. Co. v. Specialized Transp. Services, Inc.,* 249 Kan. 348, 819 P.2d 587 (1991); *Quinonez v. Andersen,* 144 Ariz. 193, 696 P.2d 1342 (1984); *Lim v. Interstate Sys. Steel Div., Inc.,* 435 N.W.2d 830 (Minn.App.1989); *Clark v. Stewart,* 126 Ohio St. 263, 185 N.E. 71 (1933)). The court ruled that, in Kansas, the torts of negligent hiring, retention, or supervision are torts "distinct from respondeat superior," as they are "not derivative of the employee's negligence." *Id.* at 1225,. "Liability is not imputed, but instead runs directly from the employer to the person injured." *Id. See also, Miller v. Dillard's Inc.,* 47 F.Supp.2d 1294, 1299 (D.Kan.1999) ("Even if the employer admits the employee was acting within the scope of his or her employment, the plaintiff may still bring an action for both respondeat superior and negligent entrustment or negligent hiring, retention, or supervision.") (internal quotation and citation omitted); *Mart v. Dr. Pepper Co.,* 923 F.Supp. 1380, 1389 (D.Kan.1996) ("Liability for negligent supervision and retention is not vicarious liability under the doctrine of respondeat superior, but is direct liability...."). Therefore, the Kansas court held that "State Farm's admission in this case that Jerry Auck was an employee acting within the scope of his employment at the time of the accident does not prohibit the plaintiffs from maintaining an action based on claims of negligent hiring, retention, or supervision." *Id.*

The Kansas Supreme Court's decision in *Marquis* clearly negates Dahlsten's argument in support of its motion for summary judgment. Applying Kansas law, the court finds that Dahlsten's concession of respondeat superior liability does not preclude plaintiff from proceeding on separate claims against Dahlsten for negligent hiring, training, retention, or supervision. The court notes, however, that the claims upon which plaintiff may proceed are limited to those recognized by Kansas law[5] and those set out in the First Amended Pretrial Order.[6] (Doc. 66) ("[T]his Pretrial Order shall supersede pleadings and control the future course of the action.").

• **Plaintiff's Motion for Summary Judgment**

Plaintiff also seeks partial summary judgment on two grounds. First, plaintiff asks the court to find Mr. Barry and Dahlsten-on the theory of respondeat superior-negligent per se based on Mr. Barry's alleged violation of K.S.A. § 8–1514(a), the Kansas statute requiring vehicles to be driven on the right half of the roadway. Second, plaintiff asks the court to find that Mr. Patterson was not contributorily negligent as a matter of law. Applying the summary judgment standards set forth above, the court denies plaintiff's requests.

---

5. For example, the parties have not cited, and the court has not found, any Kansas case directly holding that Kansas recognizes the tort of "negligent training." Perhaps this theory is subsumed by the tort of negligent retention, which Kansas defines as "retaining in employment a servant who is, or should be, known to be incompetent, habitually negligent, or otherwise unfit." *Plains Resources,*

*Inc. v. Gable,* 235 Kan. 580, 591, 682 P.2d 653, 662 (1984) (quoting 57 C.J.S., Master & Servant § 559).

6. For example, in setting forth her legal theories in the First Amended Pretrial Order, it does not appear that plaintiff included allegations of negligent hiring.

#### • Exhibits Offered in Support of Motion

As an initial matter, the court must address defendants' argument that the evidence offered by plaintiff in support of her motion fails to comply with Fed.R.Civ.P. 56 and must be stricken. Fed.R.Civ.P. 56 requires a party moving for summary judgment to set forth supporting facts in affidavits, depositions, answers to interrogatories, and responses to requests for admissions. *See* Fed.R.Civ.P. 56(c),(e); D.Kan.R. 56.1. Facts may also be identified in specific exhibits incorporated in affidavits or depositions. *See Adler,* 144 F.3d at 671; *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.1992).

Applying these rules, the court finds plaintiff's Exhibits C, D, and E admissible: Exhibit C is the deposition of Marshall Richard Chambers, Exhibit D is the deposition of Mr. Barry, and Exhibit E is a handwritten statement of Mr. Barry which was introduced at his deposition and marked as deposition Exhibit 6. *See* Barry Depo. at 171. Plaintiff's Exhibit B, while not accompanied by an affidavit or deposition, is a copy of a map of Kansas of which the court may take judicial notice. *See United States v. Burch,* 169 F.3d 666, 672 (10th Cir.1999) ("[M]aps are generally an acceptable source for taking judicial notice."). Plaintiff's Exhibit A must be stricken, however. Exhibit A appears to be a report compiled by the Kansas Highway Patrol based on their investigation of the accident at issue. It is not authenticated by a supporting affidavit or deposition from anyone with personal knowledge of the facts contained therein.[7] Thus, it fails to comply with Fed.R.Civ.P. 56(e). *See Daneshvar v. Graphic Technology, Inc.,* 18 F.Supp.2d 1277, 1290 (D.Kan.1998) (holding that various business records could not be used to support motion for summary judgment because they were not authenticated by affidavit or deposition); *IBP, Inc. v. Mercantile Bank,* 6 F.Supp.2d 1258, 1263 (D.Kan.1998) ("[B]usiness records, which normally would be admissible at trial under the hearsay exception set forth at Fed.R.Evid. 803(6), may be considered only if authenticated by a person through whom the exhibits could be admitted into evidence."). Considering only plaintiff's Exhibits B–E, the court will now address plaintiff's two arguments for partial summary judgment.

#### 1. Defendants' Negligence

Plaintiff first moves for partial summary judgment on the ground that defendants were negligent as a matter of law. Plaintiff alleges that Mr. Barry caused the trailer portion of the tractor trailer rig that he was driving to slide into the eastbound lane of traffic in violation of K.S.A. § 8–1514(a).[8] Plaintiff further asserts that K.S.A. § 8–1514 is an absolute liability statute, the violation of which constitutes negligence per se. The court finds that summary judgment is inappropriate as to this ground because plaintiff has failed to demonstrate that no issue of material fact relating to Mr. Barry's actions exists.

In order to succeed on her theory of negligence per se, plaintiff must prove that

---

7. Moreover, it does not qualify as a "self-authenticated" public record pursuant to Fed.R.Evid. 902(4) because it is not certified.

8. K.S.A. § 8–1514(a) provides:

Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway, except as follows:
- When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
- When an obstruction exists making it necessary to drive to the left of the center of the highway, except that any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;
- Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or
- Upon a roadway restricted to one-way traffic.

Mr. Barry violated K.S.A. § 8–1514 by allowing the trailer to slide across the center line of the highway and into the lane of oncoming traffic. As evidence of such a violation, plaintiff directs the court to a statement written and signed by Mr. Barry and given to investigating police officers within one half hour of the crash.[9] The statement reads as follows:

I was heading west on Hwy 36 and started coming into a whiteout[.] I could see a vehicle in the distance so [I] started slowing down and tapping my brakes. The next thing I noticed[,] the rearend of my trailer slid into the eastbound lane and a[n] eastbound car hit my lefthand side trailer wheels.

While this statement appears to support the theory that the trailer crossed into the eastbound lane of traffic, subsequent statements by Mr. Barry create questions of fact regarding this issue. For example, although Mr. Barry testified at his deposition that the above statement was based on the "truth as far as [he] knew it at the time," he also stated that he "wrote down a statement and what I *assumed* happened." Barry Depo. at 77–78 (emphasis added). Mr. Barry further testified that he actually does not know whether or not the trailer slid. Barry Depo. at 146. He did not feel nor see the trailer slide into the eastbound lane. Barry Depo. at 143–44, 150. Based on this record and viewing all reasonable inferences therefrom in the light most favorable to defendants as the nonmoving party, the court finds that a reasonable jury could conclude that Mr. Barry did not violate K.S.A. § 8–1514. Material issues of fact thus preclude the entry of summary judgment on this claim.

## 2. Mr. Patterson's Contributory Negligence

▇ Next, plaintiff asks the court to find as a matter of law that Mr. Patterson was not contributorily negligent. Plaintiff asserts that the "love of life presumption," recognized by the Kansas Supreme Court in *In re Roth*, applies here. 191 Kan. 493, 382 P.2d 320 (1963). The "love of life presumption" states that "a deceased will be presumed to have exercised due care for his own safety in the absence of evidence to the contrary." *Id.* at 324–25 (citing *Byas v. Dodge City Rendering Co.*, 177 Kan. 337, 279 P.2d 252). Plaintiff contends that defendants, who bear the burden of proving Mr. Patterson contributorily negligent at trial, have presented no evidence that Mr. Patterson crossed the center line of the highway or in any other way failed to exercise due care for his own safety. Plaintiff notes that Mr. Barry conceded at his deposition that he had no evidence that Mr. Patterson crossed the center line. Barry Depo. at 196. Thus, according to plaintiffs, the court must enter summary judgment for plaintiff on this issue.

The court disagrees with plaintiff's contention that summary judgment is appropriate. First, the court notes that the vitality of the "love of life presumption" in Kansas has recently been questioned. *See Garay v. Missouri Pacific R.R. Co.*, No. 96–1127–WEB, 1999 WL 1253052, at *1 (D.Kan. Oct. 29, 1999) (finding that the court did not err in not giving jury instruction on the "love of life presumption" because "the Kansas Judiciary Council Advisory Committee recommends against giving such an instruction"); PIK Civil 3d 102.71, Comment (noting that the "love of life presumption" is questionable under Kansas law). Second, even assuming that the presumption remains viable in Kansas, the presumption is a rule of necessity to be used when there are no known eyewitnesses; it does not apply when eyewitnesses observe the decedent's actions. *See Pape v. Kansas Power and Light Co.*, 231 Kan. 441, 444, 647 P.2d 320, 323 (1982). Moreover, the "love of life presumption" presumes that the decedent exercised due care for his own safety *in the absence of evidence to the contrary;* the presumption may be rebutted by direct or

---

9. Plaintiff also relies on a copy of the Kansas Highway Patrol report of the accident, which,

as discussed above, is inadmissible for summary judgment purposes.

circumstantial evidence. *See Roth,* 382 P.2d at 324–25; *Jarboe v. Pine,* 189 Kan. 44, 48, 366 P.2d 783, 786 (1961).

In this case, defendants have presented evidence from which a reasonable trier of fact could conclude that Mr. Patterson was driving too fast for the weather conditions at the time of the accident. The uncontroverted facts show that blowing snow created "white out" conditions and that snow and ice had accumulated on the highway. A co-worker of Mr. Patterson, Marshall Chambers, who had been following Mr. Patterson on the date of the accident, testified that prior to the accident Mr. Patterson was driving his vehicle between 25 and 40 miles per hour. Chambers Depo. at 43. When Mr. Patterson approached a vehicle also traveling eastbound at between 10 and 15 miles per hour, Mr. Patterson passed the vehicle. Chambers Depo. at 43. At that point, Mr. Chambers chose not to pass the slower vehicle, which is how Mr. Patterson "got so far in front of him." Chambers Depo. at 43. Approximately six miles from the accident scene, Mr. Chambers pulled his vehicle off the highway to "wait out" the weather conditions. Chambers Depo. at 47. While this evidence offered in support of defendants' position that Mr. Patterson was contributorily negligent is rather thin, and might not survive a Rule 50 motion at trial, the court cannot say, in an excess of caution on summary judgment, that a reasonable fact finder could not examine it and conclude that Mr. Patterson bore some percentage of fault for the collision. Thus, plaintiff's motion for summary judgment on this issue is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 50), which the court has construed as a motion for leave to file amendments to the First Amended Pretrial Order, is granted; plaintiff shall file an Addendum to the First Amended Pretrial Order no later than January 16, 2000. Defendants' Motion to Amend the Pretrial Order (Doc. 55) is granted; defendants shall file an Addendum to the First Amended Pretrial

Order no later than January 16, 2000. Plaintiff's Motion for Leave to File Amendment to Motion for Summary Judgment (Doc. 67) is granted. Defendants' Motion to Strike Plaintiff's Expert Witness Designations (Doc. 70) is granted. Defendants' Motion for F.R.C.P. 37 Sanctions (Doc. 74) is granted; plaintiff is prohibited from supporting her claims for damages with testimony of any witness that has failed to appear for deposition, and plaintiff shall pay the reasonable expenses, including attorney's fees, caused by plaintiff's failure to produce said witnesses. Defendant Dahlsten's Motion for Partial Summary Judgment (Doc. 44) is denied. Finally, plaintiff's Motion for Partial Summary Judgment (Doc. 51) is denied.

**IT IS SO ORDERED.**