**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

SHERRY L. HOUCK,

      Plaintiff-Appellant,

v.

CITY OF PRAIRIE VILLAGE,
KANSAS; BARBARA J. VERNON,

      Defendants-Appellees.

------------------------------------------

JOHNSON COUNTY SHERIFF'S
DEPARTMENT,

      Movant.

No. 97-3312
(D.C. No. 95-CV-4067-RDR)
(D. Kan.)

ORDER AND JUDGMENT   *

Before **PORFILIO** , **KELLY** , and **HENRY** , Circuit Judges.

---

\*      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff brought this action against her former employer, the City of Prairie Village, and her former supervisor, Barbara Vernon, alleging discrimination in violation of Title VII, 42 U.S.C. §§ 2000e through 2000e-17, 42 U.S.C. § 1983, and the Kansas Act Against Discrimination, Kan. Stat. Ann. §§ 44-1001 et seq. [1] The district court granted summary judgment in favor of defendants, finding that some of plaintiff's claimed instances of discrimination occurred outside the limitations period, and that, regarding the remaining instances, plaintiff could show neither a hostile work environment, nor municipal or supervisory liability under § 1983. Plaintiff appeals the district court's grant of summary judgment in favor of defendants.

---

[1] We will address plaintiff's Title VII and § 1983 claims on appeal. Even though plaintiff includes argument in her appellate brief based on the Kansas Act Against Discrimination, she has waived that claim. Plaintiff represented to the district court that she was withdrawing her claim brought pursuant to that state act, and, thus, the district court did not address the claim. See Houck v. City of Prairie Village, 977 F. Supp. 1128, 1132 n.5 (D. Kan. 1997). Consequently, we do not consider it on appeal. See O'Connor v. City & County of Denver, 894 F.2d 1210, 1214 (10th Cir. 1990).

We review the grant of summary judgment de novo and apply the same standard as did the district court. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. See id. In determining whether there is a genuine issue as to any material fact, "we examine the factual record and reasonable inferences therefrom in the light most favorable to [plaintiff]." Id. (quotations omitted). Guided by these standards, we affirm.

Statute of Limitations

The district court found that many of plaintiff's claims were based on instances that occurred outside the statute of limitations, and that, therefore, claims based on those instances were time-barred. See Houck, 977 F. Supp. at 1132-33 (finding certain claims against the City time-barred); Houck v. City of Prairie Village, 924 F. Supp. 120, 121-23 (D. Kan. 1996) (finding certain claims against defendant Vernon time-barred). In so finding, the district court declined to accept plaintiff's argument that the continuing violation theory saved the claims. We agree with the district court that the continuing violation theory does not apply to save the time-barred claims.

We note at the outset that this court has never specifically held that the continuing violation theory applies to claims brought pursuant to § 1983. See Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994). Indeed, we have

-3-

recognized that "the continuing violation theory is a creature of the need to file administrative charges." Thomas v. Denny's, Inc., 111 F.3d 1506, 1514 (10th Cir.), cert. denied, 118 S. Ct. 626 (1997). Following that premise, we held in Thomas that "because a [42 U.S.C.] section 1981 claim does not require filing such charges before a judicial action may be brought, the continuing violation theory is simply not applicable." Id. We need not reach the question of whether the continuing violation theory is applicable to a § 1983 claim, however, because the record shows that plaintiff's time-barred claims are not saved by the theory.

"The continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination." Hunt, 17 F.3d at 1266. The doctrine "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 n.6 (10th Cir. 1993). We have held that the following considerations are relevant in determining whether a continuing violation has occurred: "(i) subject matter -- whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence -- whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act

-4-

would continue even in the absence of a continuing intent to discriminate."    Id. at

1415.

> The permanence prong of the . . . test limits the reach of the
> continuing violation theory by restricting its operation to those
> situations underscored by its equitable foundation.  That is, if an
> event or series of events should have alerted a reasonable person to
> act to assert his or her rights at the time of the violation, the victim
> cannot later rely on the continuing violation doctrine to overcome the
> statutory requirement of filing a charge with the EEOC with respect
> to that event or series of events.

Id. at 1415 n.6.  The continuing violation doctrine is simply inapplicable in this

case:  the subject matter of plaintiff's claimed instances of discrimination varies;

the instances are relatively infrequent; and the nature of the alleged violations

should have triggered plaintiff's awareness of the need to assert her rights.

"Alternatively, a continuing violation may be established with evidence of a

pervasive, institutionalized system of discrimination, which typically involves

discrimination through an employer's policies or practices."    Purrington v.

University of Utah  , 996 F.2d 1025, 1029 (10th Cir. 1993) (quotations and citation

omitted).  The record contains no evidence of a company-wide system of

discrimination.  Further, the record indicates several remedial responses by the

City to plaintiff's various complaints.  The district court was correct in refusing

to apply the continuing violation theory to save plaintiff's claims regarding incidents that occurred outside the limitations periods. [2]

## Title VII

Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment on account of her gender. See 42 U.S.C. § 2000e-2(a)(1). Plaintiff presents her Title VII harassment claim by alleging a hostile work environment.

> For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The plaintiff must produce evidence that she was the object of harassment because of her gender.

Penry v. Federal Home Loan Bank, 155 F.3d 1257, 1261 (10th Cir. 1998). We address the question of whether sexual harassment created a hostile work environment by reviewing the record as a whole and looking at the totality of the circumstances, "such as the nature of the sexual advances and the context in

---

[2]     The limitations period for the § 1983 claims is two years. See Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993). Therefore, we consider only those § 1983 claims stemming from incidents occurring before April 26, 1993. Under Title VII, plaintiff must have filed her charge within 300 days of the conduct giving rise to her claim. See 42 U.S.C. § 2000e-5(e). Plaintiff filed her EEOC charge on May 20, 1994, and, thus, with regard to plaintiff's Title VII claims, we do not consider occurrences before July 24, 1993.

which the alleged incidents occurred." Meritor Sav. Bank, FSB v. Vinson , 477

U.S. 57, 69 (1986).

The district court detailed the facts of plaintiff's alleged instances of

harassment, and we will not repeat them here. See Houck , 977 F. Supp. at

1135-36.  The district court did not specifically examine whether each of the

occurrences were gender-based, but our review of the record indicates that not all

the events detailed by plaintiff were gender-based.  Nevertheless, since the

district court made no findings in this regard, we will assume that all the

instances were gender-based.  Having reviewed the record, we hold that the

instances of which plaintiff complains were not sufficiently pervasive or severe to

alter the conditions of plaintiff's employment.  We agree with the district court

that a reasonable juror could not find that the conduct supported by the record

created an abusive working environment.  The events occurred over a two and

one-half year period, the conduct was not physically threatening, and it did not

unreasonably interfere with plaintiff's work. See Harris v. Forklift Sys., Inc. , 510

U.S. 17, 23 (1993) (listing factors relevant to a hostile work environment

determination). [3]

---

[3]    Plaintiff places much emphasis on an excerpt from defendant Vernon's
deposition where Vernon responds affirmatively to a direct question of whether
plaintiff experienced a hostile work environment.  The district court specifically
addressed this matter, and we agree that it does not carry the legal significance
(continued...)

## § 1983

Section 1983 prohibits any person, acting under color of state law, from depriving any other person of any rights, privileges, or immunities secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. "Sexual harassment can violate the Fourteenth Amendment right to equal protection of the laws thus triggering a § 1983 cause of action." Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996). Plaintiff alleges § 1983 violations against both Vernon and the City.

1. The City.

Even if Vernon is liable to plaintiff under § 1983, "[s]imply employing a tortfeasor is not enough to establish liability under § 1983." Id. The City can be liable to plaintiff only if Vernon's actions represented an official policy or custom of the City, or "if the practice is so permanent and well settled as to constitute a

_____

[3](...continued)
that plaintiff promotes. Whether plaintiff suffered from a hostile work environment is a legal conclusion, and opposing counsel objected to the statement as such. The district court was entirely within its province in finding that the statement was of little evidentiary value in deciding the motions, because the statement was "broad and conclusory and not helpful to the understanding of Vernon's testimony or the material issues in this case." Houck, 977 F. Supp. at 1136. The court also noted that there was no indication that Vernon's use of the term "hostile work environment" "comports with the definition of 'hostile work environment' relevant to these proceedings." Id. Further, it is clear from reading the entire section of the deposition that Vernon was indicating that plaintiff perceived she suffered a hostile work environment.

custom or usage with the force of law." Id. "If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from deliberate indifference to the rights of the plaintiff." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted).

Plaintiff does not argue that the City maintained an official policy or custom of sexual harassment, and the record contains no such evidence. In fact, the City has a written policy forbidding sexual harassment that was in effect at all times during plaintiff's employment. In addition, there is record evidence of additional sexual harassment training conducted by the City during plaintiff's employment. Finally, the written policy against harassment contains procedures for handling complaints, and there is evidence that the procedures were followed in instances when plaintiff complained and that the City took steps on several occasions to remedy situations identified by plaintiff.

Plaintiff does argue that the practice of harassment was so well settled and permanent as to constitute a custom or usage of sexual harassment by the City. We disagree. The record shows that the City took steps to remedy the situations of which plaintiff complained. Plaintiff's claim that the City should be held liable because defendant Vernon did not adequately investigate and address plaintiff's complaints of sexual harassment is not supported by the record. The

record shows that plaintiff's supervisors did investigate and act on plaintiff's complaints. There is no evidence of deliberate indifference.

To the extent plaintiff alleges a failure to train by the City, that claim must also fail.

> [I]f the inaction theory rests on an alleged failure to train, the plaintiff must prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need for additional training.

Id. (quotations omitted). The record contains evidence of sexual harassment training conducted by city officials. The record does not show deliberate indifference to the need for additional training.

2. Defendant Vernon .

Plaintiff also argues that the district court improperly granted summary judgment on her § 1983 claim against Vernon. Because § 1983 does not encompass a concept of strict supervisor liability, plaintiff must show that Vernon either directed the sexual harassment or had actual knowledge of the misconduct and acquiesced in its continuance. See id. at 994-95. As previously stated, the record shows that Vernon investigated plaintiff's complaints, provided additional training in response to at least one complaint, and took appropriate action to

-10-

address plaintiff's complaints. The record does not support plaintiff's claims of liability under § 1983.

## Anti-Nepotism Policy

Plaintiff applied to be a police officer with the City. She was not considered for the job, however, because she was married to a police officer, and the City has an anti-nepotism policy. Plaintiff claims that the policy is discriminatory on the basis of sex, both on its face and as applied, in violation of 42 U.S.C. § 2000e-2(a)(1). [4] The policy is completely gender-neutral on its face. Plaintiff also argues discriminatory impact from the policy as applied. We agree

---

[4] The policy reads as follows:

> Immediate family relatives will not be hired by the City. If two employees become related while they are employed by the City, they both may continue to be employed by the City unless they work in the same department and one is in a supervisory relationship to the other. If the affected employees work in the same department and one is in a supervisory relationship to the other, and if a position of equal grade and pay is open in another department for which one of the affected employees is qualified, that employee will be given the opportunity to transfer to the open position. If no transfer position becomes available within 90 days from the date the employees become related, the affected employees must choose which one of them will resign from employment with the City, and if one of the employees does not submit a resignation within five working days thereafter, the employee with the least amount of service with the City will be required to resign.

Appellant's Br. at 34-35.

-11-

with the district court that there is absolutely no evidence in the record of discriminatory impact. Plaintiff argues that because women have been historically discriminated against in the workplace, they have less seniority than men, and, therefore, the policy is discriminatory. Plaintiff has submitted no evidence to support her theory. The district court was correct in finding that, on this record, no reasonable jury could find gender discrimination against plaintiff based on the anti-nepotism policy.

We also agree with the district court that plaintiff's claim that the anti-nepotism violates K.A.R. 21-32-4, which discourages unequal treatment of women in employment situations based on marriage, must fail. There is no provision for a private right of action in the regulation itself, see Dietz v. Atchison, Topeka and Santa Fe Railway, 823 P.2d 810, 814 (Kan. Ct. App. 1991) (holding that statutes and regulations adopted pursuant to the statutes do not create a civil liability if the statute does not purport to do so), and plaintiff abandoned her claims under the Kansas Act Against Discrimination, the statute that does provide a right of action.

## Conclusion

Plaintiff's Title VII and § 1983 claims arising from alleged misconduct that occurred before July 24, 1993, and April 26, 1993, respectively, are time-barred, and the continuing violation doctrine does not save them. With regard to the

remaining instances, no reasonable jury could conclude on this record that plaintiff experienced gender-based harassment so severe and pervasive as to make her working environment hostile or abusive. Finally, the record does not support plaintiff's § 1983 claim of violation of her right to equal protection resulting from sexual harassment. There is no evidence that defendant Vernon either acquiesced in the alleged sexual harassment or was deliberately indifferent to plaintiff's complaints of discrimination. In addition, the record does not support plaintiff's claim that sexual harassment was so permanent and well settled as to constitute a custom or usage. Neither is there evidence that the City acted with deliberate indifference regarding plaintiff's complaints or the need for training. AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge